805 So.2d 175 (2002)
Justin Brian LENARD, individually and on Behalf of the Succession of Natalie Diane Lenard and Sara Beth Lenard,
v.
Erwin DILLEY, Metro Ambulance Service, Inc. and National Union Fire Insurance Company of Pittsburgh, Pennsylvania.
No. 2001-CC-1522.
Supreme Court of Louisiana.
January 15, 2002.
*176 Thomas M. Hayes, III, Karen L. Hayes, Hayes, Harkey, Smith & Cascio, Monroe; Harry A. Johnson, III, Phelps Dunbar, Baton Rouge, Counsel for Applicant.
*177 Christian C. Creed, Creed & Creed, Monroe; Gino J. Rendeiro, Weeks, Kavanagh & Rendeiro, New Orleans, Counsel for Respondent.
CALOGERO, Chief Justice.[*]
We granted this writ to determine the standard of care that La.Rev.Stat. 32:24 imposes on the driver of an emergency vehicle. Upon review of the statute, we find it contains two alternate standards, depending on the circumstances. If, and only if, subsections A, B and C of La.Rev. Stat. 32:24 are met, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by an ordinary negligence standard.

FACTS AND PROCEDURAL HISTORY
On May 19, 1997, Metro Ambulance was notified that a vehicle traveling on Interstate 20 in Ouachita Parish, Louisiana had crashed in the median and that one person had been ejected. Metro dispatched an ambulance driven by one Erwin Dilley. When Mr. Dilley arrived at the accident scene, he parked the ambulance partially in the left lane of eastbound Interstate 20. As Mr. Dilley was attending to the victim of the accident, one Natalie Lenard, driving a private passenger vehicle, collided with the right rear of the ambulance. Mrs. Lenard, who was pregnant at the time of the accident, was killed as a result of the accident.
On July 21, 1997, Mrs. Lenard's husband, Justin Lenard, filed suit against Erwin Dilley, Metro Ambulance Service, and National Union Fire Insurance Company. On July 7, 2000, defendants filed a motion in limine, contending that La.Rev.Stat. 32:24 requires this plaintiff to prove gross negligence, and asking that the judge so instruct the jury. La.Rev.Stat. 32:24 statute reads as follows:
§ 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized *178 vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
On August 10, 2000, the trial judge granted defendant's motion in limine. In interpreting La.Rev.Stat. 32:24, the court held that when the emergency vehicle is being driven, the driver's actions are subject to a negligence standard, but for activities other than driving, the standard of care to be applied is one of "gross negligence." The court then held that, under the circumstances presented in this case, the jury would be instructed that it could not find for the plaintiff unless it believed that Mr. Dilley's conduct displayed "gross negligence."
The second circuit court of appeal reversed, finding that an interpretation of La.Rev.Stat. 32:24 required a more detailed analysis than that presented by the district court. The court of appeal found that a balancing test was necessary, holding as follows:
The difficult language of Section D of the Statute signals the need for a balancing test, not unlike the risk-utility balancing test for the determination of whether things in our custody present an unreasonable risk of harm. The privileges afforded the EMT under the statute, to respond quickly and efficiently to an accident victim, clearly foster social utility. Nevertheless, the magnitude of the risk of speeding must be counterbalanced by the sufficiency of the warning to other motorists. Finally, the emergency conditions under which the EMT must act do not require the EMT to make the best decision regarding the parking of the vehicle, so long as there is some degree of warning to other motorists which is determined by the trier-of-fact to be sufficient. Accordingly, the trial court can instruct the jury concerning the multiple factors of the risk-utility analysis suggested by the Statute.
. . .
The Statute permits conduct deviating below the ordinary standard of care expected of other drivers. Yet, insofar as such conduct must not fail to sufficiently warn other motorists, the Statute as a whole more closely prescribes a standard for ordinary negligence.
Defendants then sought, and were granted, supervisory review by this court. For the following reasons, we reverse the court of appeal and find that La.Rev.Stat. 32:24 sets out two standards of care for emergency vehicle drivers, depending on the circumstances. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by an ordinary negligence standard.

LAW AND ANALYSIS
The matter comes before this court with the case only at its pre-trial phase, via a motion in limine. This case has yet to be tried, the facts proven, and liability assessed by the jury. The sole function of this court, then, is to determine the proper standard of care to be applied to an emergency vehicle driver so that the jury can be properly instructed on the law at trial. The resolution of that issue lies in the interpretation of La.Rev.Stat. 32:24.
The starting point for the interpretation of any statute is the language of the statute itself. Cat's Meow, Inc. v. City of *179 New Orleans, 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; Touchard v. Williams, 617 So.2d 885 (La.1993).
Subsection A of La.Rev.Stat. 32:24 sets forth the circumstances in which the driver of an emergency vehicle is granted particular driving privileges. Those circumstances are when the driver is (1) responding to an emergency call; (2) in the pursuit of an actual or suspected violator of the law; or (3) when responding to, but not upon returning from, a fire alarm.
Subsection B of the statute lists the privileges granted to an emergency vehicle driver whose actions fit the circumstances enumerated in subsection A. Those privileges allow the driver to:
(1) Park or stand, irrespective of the provisions of Chapter 32 of the Louisiana Revised Statutes
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation
(3) Exceed the maximum speed limits so long as he does not endanger life or property; and
(4) Disregard regulations governing the direction of movement or turning in specified directions
Subsection C of La.Rev.Stat. 32:24 states that "the exceptions herein granted to an authorized emergency vehicle (B1-4) shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle." Subsection C, then, makes applicable the privileges under subsection B only when the emergency vehicle is making use of audible or visual signals sufficient to warn motorists of their approach.[1]
The question becomes what standard of care is to be applied to an emergency vehicle driver who qualifies under the provisions of La.Rev.Stat. 32:24(A) through La.Rev.Stat. 32:24(C). The applicable standard of care for emergency vehicle driver is the subject of much debate, not only among the parties in this litigation but among litigants in Louisiana appellate courts and courts in other states throughout the nation.
Louisiana, like many other states with similar statutes, has based its emergency vehicle exception statute upon the Uniform Vehicle Code. The common litigation surrounding these statutes concerns whether the standard of care placed upon emergency vehicle drivers is one of ordinary negligence or something more, reckless disregard for the safety of others. Some states have imposed liability for mere negligence, some impose liability for negligence with an emphasis on the circumstances of the emergency, while others apply a reckless disregard standard of care. See City of Amarillo v. Martin, 971 S.W.2d 426 (Tex. 1998).
In Louisiana's emergency vehicle statute, the standard of care is set forth in subsection D. That provision states that "the foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
It is the use of "due regard" and "reckless disregard" in the same sentence which has caused the confusion. Plaintiff argues that the phrase "due regard" in subsection *180 D establishes a "general negligence standard" for drivers of emergency vehicles. Defendants argue, on the other hand, that the correct standard is "reckless disregard." We do not view the issue so simply. One standard of care for emergency vehicle drivers applied in all situations does not seem the proper interpretation of this ambiguous statute. While subsection D uses both the term "due regard" and "reckless disregard," we do not find the recited dual standards necessarily inconsistent.
La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B and C of La.Rev.Stat. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver's actions will be gauged by a standard of "due care."
"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). "Reckless disregard" or "gross negligence" is the standard to be applied if the emergency vehicle driver's actions fit La.Rev.Stat. 32:24(A) through La.Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.
Thus, if the provisions of subsections A, B and C of La.Rev.Stat. 32:24 apply to the accident or incident in question, then the driver will be held liable only for his conduct which constitutes reckless disregard for the safety of others. For example, for the actions of a driver in circumstances like that involved in this case to be scrutinized under the reckless disregard standard of care, the following must be met:
The emergency vehicle must be authorized and the driver must be:
Responding to an emergency call; (or in pursuit of an actual or suspected violator of the law; or returning from a fire alarm)
and the accident or incident in question must arise out of the emergency vehicle driver's parking or standing; (or proceeding past a red or stop signal or stop sign; or exceeding the maximum speed limits; or moving or turning against the normal flow of traffic)
and the driver must make use of audible or visual signals sufficient to warn motorists of their approach. (A police vehicle, however, need not be equipped with or display a red light visible from in front of the vehicle.)
Interpreting La.Rev.Stat. 32:24 to provide that the driver of an emergency vehicle will always be subjected to one or the other standard, ordinary or reckless disregard, would lead to absurd consequences. The legislature has obviously recognized the high social value and premium placed on protection and rescue efforts and has set forth those circumstances where the "reckless disregard" standard of care applies. Applying an ordinary negligence standard to emergency vehicle drivers in all cases would restrict the effectiveness of individuals responding to emergency situations and would unduly restrain emergency vehicle drivers from performing a vital role in society.
On the other hand, the application of a reckless disregard standard in all situations *181 would also be problematic. Just because an individual happens to be an emergency vehicle driver does not automatically relieve him from liability for ordinary negligence. To hold otherwise would have the effect of severely endangering the public safety, as emergency vehicle drivers could at all times engage in ordinarily negligent behavior and be shielded from the consequences of their actions. We therefore, find that the legislature's intent was to set forth dual standards of care depending on the circumstances.
In this instance, the lower courts did not consider the standard of care set forth in La.Rev.Stat. 32:24(D) in conjunction with the other provisions of the statute. The applicable standard of care for emergency vehicle drivers necessarily depends upon whether the driver's actions fit subsections A, B and C of La.Rev.Stat. 32:24. Here, the matter is in the pre-trial stage. Whether or not the conduct of Erwin Dilley should be gauged by a "reckless disregard" or "ordinary negligence" standard of care is a question to be determined by the jury after being instructed on the law. We therefore, remand the matter to the district court for further proceedings.

DECREE
REVERSED; REMANDED TO DISTRICT COURT.
KIMBALL, J., concurs and assigns reasons.
KIMBALL, Justice, concurring.
Although I concur with the majority's resolution of the legal issue involved in this case, I write separately to express my belief that it is poor policy for this court to grant certiorari in cases where the decision appealed is one granting a motion in limine, a motion which is not provided for by our Codes, but has come into being by trial practice. Reviewing decisions stemming from motions in limine is, in my view, an inefficient allocation of this court's already strained judicial time and resources because decisions relating to such motions are generally made prior to trial, are interlocutory rulings that can be changed by the trial court during the course of trial, and often reach this court without a developed record upon which to review the trial court's decision. Additionally, I question the propriety of this court's exercise of supervisory jurisdiction in this particular matter since none of the writ grant considerations expressed in Louisiana Supreme Court Rule X, § 1 is present. While it is true that these considerations do not control or fully measure the court's discretion in granting an application for writs, I see no reason for this court to address the issue presented in this case at this stage of the proceedings. In my view, it would have been preferable for this court to deny the application for certiorari for the reasons expressed above, allow the case to proceed to trial, and consider the proper interpretation of La. R.S. 32:24 if the parties raise this issue in an application for supervisory writs following trial on the merits.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[1] We note that the statute specifically provides that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.