JjMICHAEL E. KIRBY, Judge.
Defendants, the City of New Orleans (“City”), Louisiana State Trooper Wilson Bulloch, III (“Trooper Bulloch”) and the State of Louisiana, through the Department of Public Safety and Corrections and Office of State Police (“State”), appeal the trial court judgment in favor of plaintiff, Natashia J. Watson. We reverse and remand for a new trial.
The following facts are undisputed: On January 22, 1997, Trooper Bulloch and Officer Darryl Coulon of the New Orleans Police Department were on patrol in New Orleans in Trooper Bulloch’s police vehicle. Trooper Bulloch was driving, and Officer Coulon was riding in the front passenger seat. Trooper Bulloch was part of a contingent of State troopers assigned to work with the New Orleans Police Department to provide additional protection in connection with the 1997 Super Bowl. At approximately 8:50 a.m., Trooper Bulloch and Officer Coulon were responding to a call of a burglary in progress on North Rampart Street.
The officers were headed toward the French Quarter on South Rampart Street with lights and sirens activated. As they approached the intersection of South Rampart Street and Canal Street, their vehicle was faced with a red light. All three lanes of traffic on the riverbound side of Canal Street yielded to the |?police vehicle, and Trooper Bulloch safely crossed the river-bound lanes of Canal Street and entered the median. In the median right before the intersection of Rampart Street and the lakebound lanes of Canal Street, a bus headed in a lakebound direction was stopped at a bus stop. As Trooper Bulloch left the median and attempted to cross the lakebound lanes of Canal Street, plaintiffs vehicle that was traveling in the far left lakebound lane of Canal Street struck Trooper Bulloch’s vehicle.
Trooper Bulloch’s actions from the time he entered the Canal Street median until he attempted to cross the lakebound lanes of Canal Street are in dispute. There was conflicting testimony at trial as to whether or not Trooper Bulloch stopped or slowed down in the median before attempting to cross Canal Street.
Trooper Bulloch testified that he stopped, looked to see if there were any oncoming vehicles in the lakebound lanes *827 of Canal Street and then proceeded to “ease” or make a “rolling stop” into the intersection at approximately 5 m.p.h. after seeing no oncoming cars. Officer Coul-on testified by deposition that Trooper Bulloch “slowed down a lot” before attempting to cross lakebound Canal Street. He also checked the traffic to the right and saw no oncoming vehicles. Trooper Bul-loch and Officer Coulon admitted that a stopped bus in the median partially obscured their vision of the lakebound lanes of Canal Street. Yolanda Bryson, an eyewitness, testified that Trooper Bulloch’s vehicle “paused” in the median before attempting to cross Canal Street. Richard Turner, the defendants’ expert in accident reconstruction and emergency vehicle policies and procedures, estimated that Trooper Bulloch was traveling approximately 5 m.p.h. prior to the collision. Mr. Turner testified that under Louisiana standards attributable to emergency vehicles, Trooper Bulloch was permitted to use a “rolling stop” under the 13circumstances. Sergeant Wayne Winkler, the investigating officer, stated that he interviewed witnesses and examined damage to the vehicles and found no physical evidence inconsistent with Trooper Bulloch’s contention that he was traveling approximately 5 m.p.h. when the collision occurred.
Eyewitness Cleasthá Williams testified that Trooper Bulloch did not slow down once he entered the median, and was driving as though he were on “a police chase.” John Rigol, the plaintiffs expert in accident reconstruction, estimated that Trooper Bulloch was traveling at 17 m.p.h. prior to the collision and his opinion is that Trooper Bulloch did not stop or slow down once he entered the median. His opinion is that Trooper Bulloch’s driving strategy was “grossly at fault” in entering the intersection of Rampart Street and the lake-bound lanes of Canal Street.[1] Plaintiff did not see the police vehicle prior to the collision.
Plaintiff filed suit against Trooper Bul-loch, the State and its insurer and the City. The State filed a third party demand against the City. Plaintiffs claims against Bulloch, the State and its insurer were tried before a jury, but the plaintiffs claim against the City and the State’s third party demand against the City were tried by the court.
Following trial, the jury rendered a verdict in favor of plaintiff and against Trooper Bulloch, the State and the Louisiana Automobile Liability Self-Insurance Fund in the amount of $949,926.00. On February 6, 2002, the trial court rendered judgment in favor of plaintiff and against those defendants in the amount of $677,126.00 because of the limitations set forth in La. R.S. 13:5106, which limits the total amount recoverable in a suit against the State or any state agency or | ¿political subdivision to $500,000.00, exclusive of medical care costs ($33,676.00), past loss of earnings ($14,650.00) and future loss of earnings ($128,800.00). The court also ordered the establishment of a reversionary trust for the benefit of plaintiff, because of the fact that the jury awarded plaintiff $128,800.00 for future medical expenses. In a judgment rendered on February 7, 2002, the trial court ordered that the City be held solidarily liable with the other defendants due to the court’s finding that the State and the City were the dual employers of Trooper Bulloch on the date in question and are solidarily liable for his negligence based on a theory of vicarious liability. *828 The trial court dismissed the State’s third party demand against the City.
On May 1, 2002, the court denied the motion for new trial and motion for judgment notwithstanding the verdict filed by Trooper Bulloch and the State. However, the court granted those defendants’ motion for remittur in part, reducing the plaintiffs award for future medical expenses to $35,000.00 and denying any recovery for future loss of income. Defendants Trooper Bulloch, the State and the City now appeal. The Louisiana Automobile Liability Self-Insurance Fund did not appeal.
La. R.S. 32:24 is the statute that sets forth the standard of care owed by the driver of any authorized emergency vehicle, and states as follows:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
| B(l) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D.The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
In its first assignment of error, the State argues that the trial court misapplied the standard of law to the jury. Specifically, the State argues that the trial court committed reversible error in failing to include in the jury instructions an explanation of the “gross negligence” standard of care applicable to drivers of emergency vehicles under certain circumstances. Shortly after the trial in this matter, the Louisiana Supreme Court handed down its decision in Lenard v. Dilley, 2001-1522 (La.1/15/02), 805 So.2d 175. In that case, the Court interpreted R.S. 32:24 as containing two alternate standards of care imposed on the driver of an emergency vehicle, depending on the circumstances: if subsections A, B and C of that statute are met, the driver will be held liable only for actions that constitute | (¡gross negligence or reckless disregard for the safety of others; if the driver’s conduct does not meet the requirements of subsections A, B and C, the driver’s actions will be gauged by an ordinary negligence standard. Id. at p. 1, 805 So.2d at 177.
In the Lenard case, our Supreme Court explained the two alternate standards of care for an emergency vehicle driver under La. R.S. 32:24 as follows:
La.Rev.Stat. 32:24(D) sets out two standards of care for an emergency vehicle driver depending on the circumstances of the ease. If, and only if, an emergency vehicle driver’s actions fit *829 into subsections A, B and C of La.Rev. Stat. 32:24, will an emergency vehicle driver be held hable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver’s conduct does not fit subsections A, B and C of La.Rev.Stat. 32:24, such driver’s actions will be gauged by a standard of “due care.”
“Due care” is synonymous with ordinary negligence. “Reckless disregard,” however, connotes conduct more severe than negligent behavior. “Reckless disregard” is, in effect, “gross negligence.” Gross negligence has been defined by this court as “the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise.” State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). “Reckless disregard” or “gross negligence” is the standard to be applied if the emergency vehicle driver’s actions fit La.Rev.Stat. 32:24(A) through La. Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.
Id. at pp. 6-7, 805 So.2d at 180.
This case is unique in that the jury instructions given by the trial court, which included a recitation of La. R.S. 32:24, were not erroneous at the time they were given. However, the Supreme Court’s subsequent interpretation of La. R.S. 32:24 in Lenard v. Dilley, supra, just days after trial in this matter was concluded ^nonetheless renders the jury instructions given by the trial court inadequate for purposes of explaining to the jury the standard of care owed by a driver of an emergency vehicle. Because the Lenard case did not create new law but merely interpreted an existing statute, the principles enunciated in that case are to be applied retroactively. See, Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992); see also, Matthews v. Maddie, 2001-1535 (La.App. 1 Cir. 6/21/02), 822 So.2d 739, writ denied, 2002-2420 (La.11/22/02), 829 So.2d 1052. For that reason, we must conclude that the trial court committed reversible error in omitting applicable essential legal principles in its instructions to the jury. See, Snia v. United Medical Center of New Orleans, 93-2367, pp. 1-2 (La.App. 4 Cir. 5/26/94), 637 So.2d 1290, 1291.
Both the plaintiff and the State argue in their appeal briefs that- this case warrants de novo review of the record by this Court due to the trial court’s inadequate jury instructions. Under Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975), when an appellate court has all of the facts before it, a trial court’s erroneous jury instruction does not warrant a remand. However, given the unique circumstances of this case, with the Louisiana Supreme Court rendering its decision interpreting La. R.S. 32:24 just days after trial in this matter was concluded, we find that fairness dictates that the parties should have the opportunity to retry this case with the benefit of the principles enunciated in the Lenard ease. Accordingly, we reverse the trial court judgment and remand for a new trial. Because of this decision, we need not address the other issues raised in this appeal.
For the reasons stated above, we reverse the trial court judgment and remand this matter for a new trial.
I «REVERSED AND REMANDED.
BAGNERIS, J., concurs.

. We note that Mr. Rigol was accepted as an expert in the field of accident reconstruction only. He was not offered as an expert in the field of emergency vehicle policies and procedures.