JOHN YRLE
v.
ST. TAMMANY FIRE PROTECTION DISTRICT #1 AND AMERICAN ALTERATIVE INSURANCE COMPANY.
No. 2007 CA 0699.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
ALAN B. TUSA, CAROL T. RICHARDS, Attorneys for Plaintiff-Appellant, JOHN YRLE.
JAMES E. MOORE, Jr. Attorney for Defendants-Appellees, St. TAMMANY FIRE PROTECTION, District #1 and American, Alternative Ins. Co.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
WELCH, J.
John Yrle, plaintiff, appeals a judgment dismissing his lawsuit against defendants, St. Tammany Fire Protection District #1 and its insurer, American Alternative Insurance Corporation, upon finding that plaintiff was solely at fault in causing a motor vehicle accident. We affirm.

DISCUSSION
On February 11, 2001, a Mardi Gras parade was scheduled to run in the afternoon on Front Street in Slidell, Louisiana. At approximately 12:38, a 911 call was made reporting a fire at Yee's Chinese Restaurant, located on Pontchartrain Drive, near Front Street. The caller reported that fire was coming out of an exhaust fan on the top of the building. Emergency dispatch sent out a general alarm, called out six units to the commercial fire, and instructed them to proceed "Code 3." Code 3, an emergency status, is activated in response to an active fire where there is a potential loss of life, injury to persons, or a substantial threat of property loss. Because of his station's close proximity to the fire, Captain George Elliot, Jr. radioed dispatch to determine if his fire engine, Unit 128, should respond to the fire. Dispatch confirmed and ordered Unit 128 to respond to the fire.
Unit 128 left the West End station and proceeded to Front Street in Code 3 status, with its lights and sirens activated. A call came in over the radio announcing that smoke could be seen in the sky, and Unit 111, the on-scene command unit, announced that smoke was coming from the back of the building. Soon thereafter, the command unit advised all units that the fire at Yee's was a grease fire in the kitchen and requested that dispatch send the first four units called to the fire and cancel the rest. The dispatcher then announced that units 118, 117, 168, and 167 were to proceed to the fire and cancelled all other units per command. Unit 128 made a call into dispatch to ask if it had been cancelled.
Before a response was received, a call came over the radio announcing that flames were coming through the roof. Unit 128, which had dropped down to Code 1 or non-emergency status, resumed its Code 3 status and proceeded along Front Street with its sirens and horns activated.
At the same time, plaintiff was stopped in traffic in the southbound left-hand lane of Front Street on his motorcycle, waiting to make a left turn into the parking lot of a bar to watch the parade with his friends. He observed Unit 128 approaching in his rear view mirror with its lights flashing and heard the sirens. Traffic along both of the southbound lanes of Front Street was congested; however, there was no traffic in the northbound lanes of Front Street. At some point, while traveling down Front Street, Captain Steven Billman, who was driving Unit 128, decided to enter the northbound lanes of Front Street to get around the traffic in the southbound lanes. While Unit 128 was in the northbound lane driving against traffic, plaintiff made a left turn directly into the path of the vehicle and was struck by Unit 128. Thereafter, plaintiff filed this lawsuit seeking to recover damages for injuries to his shoulder and knee sustained in the collision.
A threshold issue presented to the trial court was the appropriate standard of care applicable to Captain Billman, the driver of Unit 128. Louisiana Revised Statutes 32:24(B)(4) permits a driver of an authorized emergency vehicle, who is responding to an emergency call, to disregard regulations governing the direction of movement for vehicles. The Louisiana Supreme Court determined that a driver of an emergency vehicle whose actions fall under La. R.S. 32:24 will be liable only if his conduct constitutes reckless disregard for the safety of others and thus rises to the level of gross negligence. Lenard v. Dilley, XXXX-XXXX, pp. 6-7 (La. 1/15/02), 805 So.2d 175, 180. For a case to fall under this standard, an emergency vehicle must be authorized and the driver must be: (1) responding to an emergency call; (2) the accident must arise out of one of the listed driver actions, including moving against the normal flow of traffic, and (3) the driver must make use of audible or visual signals sufficient to warn motorists of their approach. Dilley, XXXX-XXXX at p. 7, 805 So.2d at 180. If the emergency vehicle driver's conduct does not fit the statute, his actions must be gauged by a standard of ordinary negligence. Id.
At trial, plaintiff insisted that Unit 128 had been cancelled from its Code 3 status and should have been proceeding Code 1 at the time of the collision, which would obligate it to obey the normal regulations governing traffic. Defendants insisted that Unit 128 had properly resumed its Code 3 status upon hearing the radio transmission that flames were going through the roof, and that all of the requirements of La. R.S. 32:24 had been met. Accordingly, defendants insisted they could only be liable to plaintiff if Captain Billman acted in reckless disregard for the safety of others.
The evidence on this issue consisted of a tape of the radio transmissions broadcast near the time of the fire, the testimony of Captain Billman and Captain Elliot, who rode in Unit 128 that day, as well as the testimony of Fire Chief Larry Hess and plaintiff's expert witness, Wilmer Dane. Captains Billman and Elliot testified that they initially responded Code 3 to the fire, but stepped down to Code 1 after hearing it was a grease fire. However, they testified, upon hearing that there were flames through the roof, they stepped back up to Code 3 to respond to the fire.
Chief Hess and Mr. Dane testified as to whether Captain Billman's actions in resuming Code 3 status were consistent with normal firefighter practices. Plaintiff sought to exclude the testimony of Chief Hess on the ground of relevancy because he was not the fire chief at the time of the accident, but was hired in October of 2002. The court overruled the objection, believing that the fact Chief Hess was not the fire chief on the date of the accident would go to the weight of his testimony. Chief Hess testified that if a responder heard a transmission that flames were going through a roof, the normal procedure would be to resume under the proper working code for a fire, which is Code 3. He attested that there was no need for the officers to wait for dispatch to tell them to resume to Code 3. Mr. Dane, however, disagreed and opined that the operators should have been in Code 1 status at the time of impact. He opined that Captains Billman and Elliot should have terminated their response to the fire and believed that at the time of the collision, they had self-dispatched and were "free-lancing." On cross-examination, it was revealed that Mr. Dane's opinion was based on his belief that the collision occurred before the transmission of flames coming through the roof was broadcast. On cross examination, Mr. Dane admitted that if the transmission about flames coming through the roof was heard before the collision, he would give the operators some leeway and would conclude that resuming Code 3 status was acceptable.
After considering all of the evidence, the trial court determined that Unit 128 was operating under Code 3 status at the time of the collision. In so doing, the court focused on the tape that clearly demonstrates the transmission relating to flames through the roof occurred before the accident was called into dispatch, as well as the testimony of Captains Billman and Elliot that they heard the transmission before resuming Code 3 status. The court also relied on the testimony of Chief Hess who felt that Captains Billman and Elliot were authorized to step their response back up to Code 3. Upon finding that Unit 128 was operating as an emergency vehicle at the time of the collision, with its lights and sirens activated, the trial court concluded that defendants could only be liable if Captain Biliman's conduct was in reckless disregard for the safety of others.
In this appeal, plaintiff asserts a number of assignments of error to these rulings. First, he insists that the evidence established that Unit 128 was not legitimately responding to an emergency at the time it struck him. Therefore, he contends, the trial court applied the wrong standard of care and should have applied a standard of ordinary negligence. He also contends that the trial court committed prejudicial error in considering the testimony of Chief Hess. We disagree.
First, we find no error in the admission of Chief Hess' testimony regarding departmental practices and procedures. Chief Hess had been employed previously as the Director of Fire Services for the Parish of St. Tammany and had served as fire chief at a chemical plant. He attested that the system in place at the time of the accident is similar to the one that was in place at the time he assumed his reign. He was certainly qualified to testify regarding normal practices and procedures applicable to firefighters in general.
Secondly, the trial court's factual determination that Unit 128 was proceeding Code 3 at the time of the collision is a factual one, which cannot be disturbed by this court in the absence of manifest error. This standard of review mandates that in order for this court to reverse a factual determination, we must find that there is no reasonable basis for the trial court's determination in the record, and the finding is manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La. 1993). After reviewing the record, particularly the tape of the radio transmissions, we find the trial court's conclusion on this issue to be reasonable, and therefore, we may not disturb its ruling.
Additionally, we find that the trial court correctly found that Captain Billman's actions were covered by La. R.S. 32:24. Captain Billman was (1) responding to an emergency call; (2) the accident arose out of the emergency vehicle's moving against the normal flow of traffic; and (3) Captain Billman used audible and visual signals sufficient to warn motorists of his approach. Therefore, the court properly found that the defendants could only be held liable if Captain Billman's actions demonstrated reckless disregard for the safety of others or were grossly negligent.
The trial court ruled that plaintiff failed to prove by a preponderance of the evidence that Captain Billman acted in reckless disregard for plaintiff's safety. In so doing, the court noted that there were different estimates regarding Captain Billman's speed at the time of the collision, and found as a fact that he was driving slightly in excess of 25 m.p.h., a speed found to be reasonable under the circumstances. The court stressed that Captain Billman was driving defensively and maintained a constant outlook. The court also noted that the evidence with respect to the exact point at which Unit 128 switched lanes into the northbound lane of travel was conflicting. Considering all of the conflicting evidence, the court found that Unit 128 was in the northbound lane of Front Street for threequarters of a block before impact. The court ultimately concluded that plaintiff could have seen Unit 128 approaching if he had simply looked to his left before making the turn, and found his failure to do so was the sole cause of the accident.
In this appeal, plaintiff contends that the evidence established Captain Billman acted with reckless disregard to the public and challenges the trial court's determination that he was negligent. Plaintiff insists that the only version of the accident that makes any sense is that the fire truck changed lanes abruptly before the accident because he was speeding and careened into the oncoming lane of traffic to avoid rear-ending the vehicles ahead of him. Again, we must disagree.
At trial, plaintiff insisted that he saw the fire truck in his lane of travel, immediately behind him, only seconds before he initiated his left turn. One of plaintiff's witnesses stated that the truck pulled out right before the turn and attested that the fire truck had been traveling at an excessive rate of speed. However, numerous witnesses, including one offered by plaintiff, attested that the fire truck entered the northbound lane one or more blocks before the point of impact. Additionally, the evidence on the speed of the truck prior to impact was conflicting. The trial court's factual determinations that Captain Billman did not act with reckless disregard for plaintiffs safety and that plaintiffs negligence was the sole cause of the collision are clearly supported by the record and may not be disturbed by this court.

CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff, John Yrle.
AFFIRMED.