STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0327

VICTORIA BASSETT

VERSUS

WALKER POLICE DEPARTMENT THROUGH THE CITY OF
WALKER; LOUISIANA MUNICIPAL RISK MANAGEMENT
AGENCY GROUP SELF-INSURANCE FUND; AND WESLEY
CLARKSON

*Consolidated with*

NO. 2021 CA 0328

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

VERSUS

WESLEY CLARKSON, CITY OF WALKER AND LOUISIANA
MUNICIPAL RISK MANAGEMENT AGENCY GROUP SELF-
INSURANCE FUND

Judgment Rendered: **OCT 1 8 2021**

* * * * *

On Appeal from the
21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Trial Court No. 161036 c/w 162732

Honorable Jeffrey S. Johnson, Judge Presiding

* * * * *

Kirk A. Guidry
B. Scott Andrews
C. Scott Courrege
Baton Rouge, LA

Attorneys for Plaintiff-Appellee,
Victoria Bassett


David W. Marcase
John Scott Thomas
Baton Rouge, LA

Attorneys for Defendants-Appellants,
Walker Police Department through
the City of Walker, The City of
Walker and Wesley Clarkson


William Ransom Pipes
Blaine T. Aydell
Blake A. Pino
Baton Rouge, LA

Attorneys for Plaintiff-Appellee,
State Farm Mutual Automobile
Insurance Company

\* \* \* \* \*

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**HESTER, J.**

In this case arising out of a motor vehicle accident, defendants, the Walker Police Department through the City of Walker, The City of Walker, and Wesley Clarkson, appeal a judgment of the trial court finding defendants liable to plaintiff, Victoria Bassett, under the ordinary negligence standard. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

On April 28, 2018, Walker Police Department police officers Wesley Clarkson and Gerald Sicard were on duty, each driving Dodge Chargers southbound on Walker South Road between Highway 190 and Interstate 12. Around 9:42 a.m., the dispatcher on duty at the Walker Police Department received a call from the Livingston Parish Sheriff's Office about an in-progress, rolling disturbance heading to the Walker Police Department. Clarkson and Sicard were advised by the dispatcher to respond to the police department, as she was the only person there at the time of the call. The officers then reversed direction on Walker South Road in order to head north toward the police department with lights and sirens engaged.

Clarkson and Sicard approached the intersection of Highway 190, which has six lanes including the right and left-hand turn lanes at the intersection with Walker South Road, and were faced with a red light at the traffic control signal. Sicard first arrived at the intersection, proceeded with caution through the intersection, and continued en route to the Walker Police Department. When Clarkson arrived at the intersection, the traffic control signal was still red, and he attempted to cautiously proceed through the intersection. However, Clarkson never made it through the intersection, as his 2014 Dodge Charger was struck by a 2016 Toyota Camry driven by plaintiff, who was traveling westbound on Highway 190.

On October 15, 2018, plaintiff filed a Petition for Damages seeking to recover damages for the injuries she sustained as a result of the automobile accident that

3

occurred on April 28, 2018.[1] Named as defendants were the Walker Police Department through the City of Walker ("Walker Police Department") and Wesley Clarkson (sometimes hereinafter collectively referred to as "defendants").[2] Plaintiff alleged that Clarkson was acting in the course and scope of his employment with Walker Police Department at the time of the wreck. Plaintiff further alleged that the wreck, injuries, and damages sought by plaintiff were caused by Clarkson's fault and his general failure to exercise the required degree of care commensurate with the driving situation presented at the time. Additionally, plaintiff alleged that Clarkson was not entitled to the protections afforded to the driver of an authorized emergency vehicle set forth in La. R.S. 32:24, which will only hold the operator of an emergency vehicle liable for actions constituting gross negligence if the statutory requirements are met, because (1) Clarkson was not responding to an emergency call at the time of the accident; (2) Clarkson proceeded past the red traffic control signal without slowing down or stopping as necessary for safe operation; (3) Clarkson endangered life and property while exceeding the maximum speed limit; and/or (4) Clarkson was not making use of audible or visual signals sufficient to warn motorists, like plaintiff, of his approach.

A bench trial was held on October 5-6, 2020, during which time numerous exhibits were introduced and testimony was heard. At the conclusion of the trial, the trial court determined that the emergency had subsided and that Clarkson failed to slow down or sufficiently stop as was necessary for safe operation before proceeding past a red light. Therefore, Clarkson was not entitled to the protections

---

[1] Plaintiff's insurer, State Farm Mutual Automobile Insurance Company, which provided collision coverage for plaintiff's vehicle, filed a separate suit against Wesley Clarkson, the City of Walker and the Louisiana Municipal Risk Management Agency Group Self-Insurance Fund in order to recover amounts paid to plaintiff for property damage. State Farm then dismissed the Louisiana Municipal Risk Management Agency Group Self-Insurance Fund without prejudice. The State Farm suit was consolidated with the instant suit shortly thereafter. State Farm has not appealed, and none of the issues raised by the parties to this appeal are related to State Farm.

[2] The Louisiana Municipal Risk Management Agency Group Self-Insurance Fund was also named as a defendant, but was dismissed without prejudice by plaintiff.

afforded pursuant to La. R.S. 32:24, and the ordinary negligence standard of "due care" applied to Clarkson's actions. See **Lenard v. Dilley**, 2001-1522 (La. 1/15/02), 805 So.2d 175, 180. The trial court then allocated 80% of the fault for causing the April 28, 2018 accident to Clarkson and 20% of the fault to plaintiff.

The final judgment was reduced to writing and signed by the trial court on October 22, 2020, and defendants timely sought and obtained a suspensive appeal from this judgment. Defendants assigned the following assignments of error: (1) the trial court erred in finding that La. R.S. 32:24 did not apply to Clarkson, and (2) the trial court erred in failing to apply La. R.S. 32:125 (providing the procedure for motorists on approach of an authorized emergency vehicle) to the actions of plaintiff.

## STANDARD OF REVIEW

In reviewing a trial court's findings of fact, an appellate court may not set aside those findings absent manifest error or unless the findings are clearly wrong. **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882 (La. 1993). In order to reverse a trial court's findings, an appellate court must determine that there exists no reasonable basis for the trial court's factual finding and the record shows the finding is clearly wrong or manifestly erroneous after a review the record in its entirety. **Id**. "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." **Id**.

While it is not accurate to state that a trial court's factual findings can never or hardly ever be erroneous, deference should be given to the fact finder. **Bonin v. Ferrellgas, Inc.**, 2003-3024 (La. 7/2/04), 877 So.2d 89, 95. Accordingly, when the evidence supports two permissible views, a fact finder's choice of one of the views cannot be said to be clearly wrong or manifestly erroneous. **Id**. This is especially true when the trial court's factual findings are based on witness credibility, for only

the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. **Pinn v. Pennison**, 2016-0614 (La. App. 1st Cir. 12/22/16), 209 So.3d 844, 847.

## LEGAL PRECEPTS

Louisiana Revised Statutes 32:24 sets forth the privileges and duties of the driver of an authorized emergency vehicle and provides, in pertinent part, as follows:

> A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
>
> B. The driver or rider of an authorized emergency vehicle may do any of the following:
>
> ....
>
> (2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
>
> ....
>
> C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
>
> D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

While commonly referred to as "emergency vehicle immunity," as explained in **Lenard**, La. R.S. 32:24(D) provides two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver's actions fit into subsections A, B, and C of La. R.S. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. However, if the emergency vehicle driver's conduct does not fit subsections A, B, and C of La. R.S. 32:24, the driver's actions

6

will be gauged by the ordinary negligence standard of "due care." **Lenard**, 805 So.2d at 180.

Additionally, the corresponding duty of other motorists to authorized emergency vehicles is set forth in La. R.S. 32:125,[3] which provides, in pertinent part, as follows:

> A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

> B. When any vehicle making use of any visual signals as authorized by law, including the display of alternately flashing amber or yellow warning lights is parked on or near the highway, the driver of every other vehicle shall:

> (1) When driving on an interstate highway or other highway with two or more lanes traveling in the same direction, yield the right-of-way by making a lane change into a lane not adjacent to the parked vehicle, if possible with due regard to safety and traffic conditions. If a lane change is not possible, the driver shall slow to a reasonably safe speed.

> (2) Maintain a safe speed for road conditions, if unable or unsafe to change lanes, or driving on a two-lane road or highway.

> C. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

## DISCUSSION

In finding that Clarkson was not entitled to the protections afforded pursuant to La. R.S. 32:24, the trial court made two factual determinations: (1) that there was no longer an emergency, and (2) that Clarkson failed to slow down or sufficiently stop as was necessary for safe operation before proceeding past a red light. Stated another way, the trial court found that Clarkson failed to meet the requirements set forth in La. R.S. 32:24(A) and (B)(2), and applied the ordinary negligence standard

---

[3] It is noted that La. R.S. 32:125(B) was amended in 2021 by La. Acts No. 78 to add green to the list of colors of warning lights. 2021 La. Sess. Law Serv. Act. 78

7

to this case. For this court to reverse the ruling that the reckless disregard standard of care was not applicable to Clarkson's actions, we must find that both of the trial court's factual determinations were manifestly erroneous. See **Stobart**, 617 So.2d at 882; **Lenard**, 805 So.2d at 180.

Defendants strenuously argue to this court that it was clear error for the trial court to impute the knowledge of the Walker Police Department that the emergency had subsided to Clarkson. According to the evidence and testimony, an unidentified female caller notified the Livingston Parish Sheriff's Office around 9:37 a.m. on April 28, 2018 that a male in a silver Sebring was following the caller. The caller indicated that she wanted to meet someone at the Walker Police Department, and the time of this request on the Incident Report was noted by Livingston Parish Sheriff's Office as 9:39:41 a.m. The Walker Police Department dispatcher received notification from the Livingston Parish Sheriff's Office around 9:40 a.m. that the caller was en route to the Walker Police Department. The dispatcher was advised to get an officer to the police department, as there was no one else present at the police department that day. At that point, the dispatcher sent out the call to the responding Walker police officers, which was between 9:40 a.m. and 9:42:23 a.m. when the dispatched call was entered into the computer.

However, at 9:40:33 a.m. the caller had advised the Livingston Parish Sheriff's Office that the male in the silver Sebring was no longer following her, but that she still intended to meet someone at the Walker Police Department. By 9:43:40 a.m., the caller indicated that she was no longer heading to the Walker Police Department and, instead, was waiting to meet someone at a nearby store. The Livingston Parish Sheriff's Office report indicates that this information was communicated to the Walker Police Department at 9:49:11 a.m.

Clarkson was unaware of the updated status of the emergency at the time of the accident with plaintiff, which occurred around 9:43:46 a.m. The dispatcher

could not recall whether she provided any updates to the officers after the initial call. Sicard testified that, "[o]nce I actually arrived at the police department, dispatch had keyed up and notified us that the altercation in the vehicle, [that] they had turned around and they were heading away from the city." Right after receiving this information from the dispatcher, Sicard received a request from Clarkson to return to the intersection of Highway 190 and Walker South Road.

The testimony and evidence demonstrate that all of the relevant events transpired in rapid succession. Within a minute of the Livingston Parish Sheriff's Office receiving notification that a caller was being followed and heading to the Walker Police Department, the dispatcher at the Walker Police Department was notified. Within two minutes, the dispatcher notified the responding officers who then began driving to the police department. Also in this two-minute window, the caller notified the Livingston Parish Sheriff's Office that she was no longer being followed and no longer driving to the Walker Police Department. Seconds later, the crash between Clarkson's and plaintiff's vehicles occurred.

Notwithstanding the novel questions these precise facts and circumstances present, we pretermit any ruling on whether the trial court was clearly wrong in determining the emergency subsided prior to Clarkson being dispatched or whether the trial court properly imputed the knowledge of the status of the emergency to Clarkson for purposes of La. R.S. 32:24(A), which requires that the driver be "responding to an emergency call," as neither ruling is determinative in this case. If Clarkson's conduct does not fit subsections A, B, *and* C of La. R.S. 32:24, his actions will not be evaluated under the reckless disregard standard. See **Lenard**, 805 So.2d at 180. Because we find that the trial court's determination that Clarkson failed to slow down or sufficiently stop as was necessary for safe operation before proceeding past a red light was not manifestly erroneous, *i.e.*, that Clarkson's conduct did not fit within subsection B(2) of La. R.S. 32:24, it is immaterial whether Clarkson was

9

determined to be responding to an emergency call in accordance with La. R.S. 32:24(A).

Subsection B(2) of La. R.S. 32:24 provides that the driver of an authorized emergency vehicle may proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation. It is clear that Clarkson was proceeding past a red light at the traffic control signal at the time of the accident. However, a thorough review of the testimony and evidence demonstrates that the trial court was not manifestly erroneous in concluding that Clarkson failed to slow down or stop as was necessary for the safe operation in this case.

The trial court heard testimony from both Sicard and Clarkson regarding their approach and entry into the intersection of Walker South Road and Highway 190. Both officers testified that, while heading northbound on Walker South Road, the traffic control signal facing them was red. Both officers observed other vehicles in front of them on Walker South Road stopped at the red light, as well as other vehicles present in both directions of travel on Highway 190. As Sicard and Clarkson passed the northbound vehicles on Walker South Road and approached the threshold of the intersection, they observed an 18-wheeler coming from the westbound Highway 190 left turn lane in the process of turning onto Walker South Road. Sicard made eye contact with the driver of the 18-wheeler, was able to drive around and, using caution, cleared the intersection.

While the 18-wheeler was still in the intersection, Clarkson looked to his left and to his right and could see additional vehicles stopped in the left turn lane on Highway 190. Once Clarkson made eye contact with the driver of the 18-wheeler, Clarkson waved the 18-wheeler through the intersection. At this point, Clarkson was at a complete stop just past the pedestrian crosswalk that crossed Walker South Road and was utilizing the on-off switch for the siren. After the 18-wheeler cleared

the intersection, Clarkson began creeping further into the intersection, but observed a truck to his left heading eastbound on Highway 190 beginning to go through the intersection. Clarkson stopped again. As the driver of the truck noticed Clarkson, he hesitated. Clarkson then waved the truck through the intersection, and the truck drove in front of Clarkson heading eastbound on Highway 190. By this point, approximately six seconds had elapsed from the time that Sicard had cleared the intersection according to Clarkson's testimony.[4] Clarkson testified that at the moment the truck cleared, he began to accelerate through the intersection and was looking north in order to exit the intersection. Shortly thereafter, the crash occurred.

Regarding his understanding for clearing an intersection, Clarkson explained that you would need to "yield to traffic until you feel it is safe to go through ... make eye contact with each individual driver who is stopped – make eye contact with each individual, make sure they have stopped and/or yielded to you, clear each intersection[,] one lane at a time." However, Clarkson testified as follows:

> Q: You arrive at the intersection, you look left and you look right, correct?
>
> A: Correct.
>
> Q: Then all of this waving occurs, then you accelerate and you are looking north to go out of the intersection?
>
> A: I mean, you are scanning the entire time while sitting there.
>
> Q: While sitting there, I got you. But once those trucks clear, then you are looking north and you are accelerating out of –
>
> A: Yes. My scanning was complete and I accelerated forward.
>
> Q: You never saw Mrs. Bassett coming from your right-hand side?
>
> A: I never saw Mrs. Bassett.
>
> Q: [...] accelerating means increasing your speed, correct?
>
> A: I agree with that.

---

[4] In fact, approximately 6.36 seconds elapsed between Sicard's vehicle passing through the intersection and the crash between Clarkson's and plaintiff's vehicles.

11

...

Q:     Not creeping or easing through the intersection.  Would you agree with that?

A:     You have to accelerate to creep or ease.

Q:     You do.  I understand you have to get the car in motion.  But at the moment that you were struck, you are actually continuing to accelerate, correct?

A:     Creep or ease.

Q:     You were creeping?

A:     Yes, sir, I was accelerating.  I was putting the vehicle in motion to go forward.

Sicard testified that, as he went around the 18-wheeler, he recalled seeing vehicles stopped in the left turn lane on Highway 190 in order to head south on Walker South Road, one of which was a pick-up truck.  As he proceeded through the intersection, Sicard verified that any car at the intersection was stopped or saw him.  Sicard was sure there were no other vehicles traveling on Highway 190 posing a danger to him at the intersection.  He did see vehicles approaching the intersection from a distance, but observed they were not a threat to him due to the distance those vehicles were away from the intersection.  Sicard agreed that if those vehicles were within a hundred feet of the intersection and were traveling forty-five miles per hour (the speed limit on Highway 190 near the intersection), which translates to about sixty-six feet per second, he would have yielded to those vehicles.

Based on the testimony and evidence, the trial court was not manifestly erroneous in concluding that Clarkson failed to slow down or sufficiently stop as was necessary for safe operation before proceeding past a red light.  Specifically, the trial court concluded as follows:

[A]fter that truck passed, your testimony was[,] ["]I made eye contact with everybody that was stopped in the intersection and then I proceeded north.["] *You had to do a little more than that. Because you had a lane of travel with a green light at 45 miles per hour and you had two lanes blocking your view*. That is a tough place for you to be in, Deputy Clarkson. I mean, it is, because you have got to inch your car out and look around. Maybe you could have gone a little further to the left to create some space, I don't know. It is a tough spot

12

to be in, but it is what your training requires you to do in that instance. She has no way of knowing. ... You have the training and experience and expectation to be able to do that. So I am not casting a stone at you. I am just saying based on these facts I think that the vast majority of the negligence lies with you.

(Emphasis added.)

Additionally, Sicard testified there were vehicles in the left turn lane obstructing the westbound view of traffic and there were vehicles traveling toward the intersection prior to Clarkson's passage. Sicard further indicated that he verified that any vehicle at the intersection was stopped or saw him and verified that there were no Highway 190 westbound vehicles (the direction plaintiff was travelling) threatening his safe passage through the intersection. However, Clarkson testified that he did not look back to the lane of travel coming toward the west as he proceeded through the intersection after allowing the 18-wheeler and the truck to pass, which was contrary to Clarkson's own training and understanding.

In view of the entirety of the record, we are unable to conclude that the trial court was manifestly erroneous in determining that Clarkson failed to slow down or stop as necessary under the circumstances and that Clarkson's actions did not fit within the requirements of subsection B(2) of La. R.S. 32:24. Therefore, the trial court did not err in applying the ordinary negligence standard of "due care." See **Lenard**, 805 So.2d at 180. Defendants' first assignment of error lacks merit.

We further do not find any merit in defendants' second assignment of error that the trial court failed to apply La. R.S. 32:125 to the actions of plaintiff. Louisiana Revised Statutes 32:125 provides the procedure for motorists on approach of an authorized emergency vehicle. Specifically, drivers must yield the right-of-way upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only. La. R.S. 32:125(A). Drivers must also stop and remain in such position until the authorized emergency vehicle has passed, except when

otherwise directed by a police officer. La. R.S. 32:125(A). Nevertheless, subsection C expressly provides that nothing in La. R.S. 32:125 operates to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

The duty provided in La. R.S. 32:125(A) arises only when a motorist observes or hears, or under the circumstances should have observed or heard, the audible or visual warnings of the emergency vehicle. **Inzinna v. Guitreau**, 2018-0905 (La. App. 1st Cir. 2/22/19), 272 So.3d 582, 594. Plaintiff testified that, as she was traveling westbound on Highway 190, she neither saw Clarkson's vehicle nor heard the sirens until the vehicles collided. According to plaintiff, the line of vehicles traveling from the westbound lane into the left turn lane blocked her view of the intersection.

While not expressly mentioning the duty set forth in La. R.S. 32:125, the trial court specifically admonished plaintiff, stating as follows:

> 45 is entirely too fast coming into an intersection that is one of the busiest in this parish. That doesn't mean that you were a lot at fault, but it does mean you have got to slow down there. There [are] lots of things going on. ... but you can't be going 45 there. You know, you have got to get your foot off the accelerator and slow down.
>
> So, I am going to assess 20 percent of fault to you for failure to slow down.

In light of the trial court's consideration of the fault and duty of plaintiff in this case, we cannot state that the trial court was clearly wrong in failing to expressly apply La. R.S. 32:125 to the actions of plaintiff. Moreover, defendants do not challenge the assessment of fault made by the trial court. Defendants' second assignment of error is without merit.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's October 22, 2020 judgment in favor of plaintiff, Victoria Bassett, and against defendants, the Walker Police Department through the City of Walker, The City of Walker, and Wesley

14

Clarkson. All costs of this appeal in the amount of $7,723.00 are assessed to defendants, the Walker Police Department through the City of Walker, The City of Walker, and Wesley Clarkson.

**AFFIRMED**.