CHUTZ, J.
| ¡Plaintiff-appellant, Kira Thigpen, appeals the trial court’s grant of summary judgment in favor of defendants-appellees, Cpt. Christopher Lacombe, Ascension Parish Fire Protection District No. 3 (District No. 3), and their liability insurer, American Alternative Insurance Corporation, dismissing her claims for damages as a result of a motor vehicle accident. Additionally, defendants filed a writ application, challenging an evidentiary ruling made by the trial court. For the reasons that follow, we deny the writ and we affirm the judgment.
I. FACTUAL AND PROCEDURAL BACKGROUND
On May 19, 2011, at around 9:00 p.m., Cpt. Lacombe responded to an emergency call dispatched to District No. 3 concerning a motor vehicle accident. Driving a 2001 E-One Pumper fire truck, Engine #30, with three other fire fighters aboard, Cpt. Lacombe proceeded from the station house on Highway 73 in Prairieville onto westbound Interstate Highway 10 (I—10) with the emergency lights and sirens activated. As he approached the parish line between Ascension and East Baton Rouge parishes where the accident was reported to have occurred, he saw a Louisiana State Trooper’s vehicle with its blue lights flashing on the eastbound 1-10 roadway, across the median on the south side shoulder. In an effort to ensure administration of emergency responder services as quickly as possible, Cpt. Lacombe stopped Engine # 30 in the left lane of I—10 to allow the other fire fighters to exit the vehicle and render aid. While the fire fighters were in the process of exiting Engine # 30, Thig-pen’s 2004 Honda Civic, which was traveling approximately 60 mph, ran into the back of the fire truck. Although a passenger in her car was able to exit, Thigpen was not. After she was extricated from her car, Thigpen was taken to an area hospital where she received medical treatment.
Thigpen subsequently filed this lawsuit, naming as defendants, Cpt. Lacombe as the driver of Engine # 30, his employer, District No. 3, whom she haverred was vicariously liable for Lacombe’s actions, and their liability insurer.[1] Defendants filed an answer and discovery was conducted. Thigpen subsequently filed a motion for partial summary judgment, asserting that defendants were not entitled to the immunity afforded the driver of an emergency vehicle under Louisiana’s Highway Regulatory Act.[2] Defendants responded with a cross motion for summary judg *1143 ment, contending they were entitled to immunity and, further, to dismissal from the lawsuit because Thigpen was unable to prove that Lacombe breached the applicable standard of care. When, in opposition to defendants’ motion for summary judgment, Thigpen relied on the opinion of an accident reconstruction expert, Michael Gillen, defendants filed a motion to exclude his testimony.
The trial court conducted a hearing on the motions. After argument and the presentation of the parties’ supporting documents, the trial court denied Thigpen’s motion for partial summary judgment and granted summary judgment in favor of defendants on the issue of the applicable standard of care. The trial court also denied the motion to exclude Gillen’s report and testimony but concluded that defendants were entitled to a dismissal of all of Thigpen’s claims against them. Thigpen appealed, and defendants filed a writ application challenging the trial court’s admission of Gillen’s report and testimony, which was referred to the merits of this appeal. See Thigpen v. Lacombe, 2016-1611 (La. App. 1st Cir. 3/16/17) (unpublished writ action).
II. SUMMARY JUDGMENT
In our de novo review of the trial court’s ruling on opposing motions for summary judgment, we use the same criteria that govern the trial court’s | consideration of whether summary judgment is appropriate. See Bank of New York Mellon v. Smith, 2015-0530 (La. 10/14/15), 180 So.3d 1238, 1243; Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/05/94), 639 So.2d 730, 750. Thus, we must determine whéther a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. See La. C.C.P. art. 966A(3); see Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc., 2006-1827 (La. 5/22/07), 958 So.2d 634, 638. The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966A(4).
The burden of proof rests with the movers. Nevertheless, if the movers will not bear the burden of proof at trial on the issue that is before the court, the movers’ burden on the motion does not require that they negate all essential elements of the adverse party’s claim, but rather to point out the absence of factual support for one or more elements essential to the adverse party’s claim. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the movers are not entitled to judgment as a matter of law. See La. C.C.P. art. 966D(1).
When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before us is a question of law as to the correct interpretation of the statute at issue. GameStop, Inc. v. St. Mary Parish Sales and Use Tax Dep’t, 2014-0878 (La. App. 1st Cir. 3/19/15, 6), 166 So.3d 1090, 1094, writ denied, 2015-0783 (La. 6/1/15), 171 So.3d 929. But where the issue is whether a particular fact in dispute is material, the substantive law determines materiality. See Smith v. Berteau, 98-1438 (La. App. 1st Cir. 6/25/99), 739 So.2d 269, 272.
Un her motion' for partial summary judgment, Thigpen suggested that because defendants were not entitled to assert the priviléges and immunity afforded an emergency vehicle driver under Louisiana’s Highway Regulatory. Act, her applicable burden of proof at trial was ordinary negligence. In their summary judgment motion, *1144 defendants asserted that, under Louisiana’s Highway Regulatory Act, Thigpen was required to prove Cpt. Lacombe acted with reckless disregard for the safety of others. They further- maintained that in light of the evidence produced at the hearing on the motion for summary judgment, Thigpen’s claims against them should be dismissed. >
In rendering judgment, - the trial court agreed with- defendants, concluding that at trial Thigpen had to prove a reckless disregard for the safety of others by Cpt'. Lacombe.[3] Additionally, in determining that defendants were entitled to a dismissal of the claims against them, the trial court concluded that Thigpen had failed to produce factual support sufficient to establish that Cpt. Lacombe acted with reckless disregard.
III. STATUTORY INTERPRETATION
We are first called upon to interpret the provisions of La. R.S. 32:24,- the statute setting forth the privileges and immunities afforded to drivers of emergency vehicles under Louisiana’s Highway Regulatory Act. The starting point.in the interpretation of any statute is the language of the statute itself. Fontenot v. Reddell Vidrine Water Dist., 2002-0439 (La. 1/14/03), 836 So.2d 14, 20. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied .as written, and no further interpretation. may be made in search of legislative intent. Fontenot, 836 So.2d at 20. A statute shall be construed to give meaning to the plain language of the statute, and courts may | finot extend statutes to situations that the legislature never intended to be covered. Chamberlain ex rel. Wilmer J. v. Kennedy, 2003-0488 (La. App. 1st Cir. 12/31/03), 868 So.2d 763, 767. When two or more interpretations may be given a law, the interpretation which is reasonable and practical- is preferred to that which makes the law ridiculous or meaningless. Rabalais v. Nash, 2006-0999 (La. 3/9/07), 952 So.2d 653, 662.
IV. APPLICABILITY OF LA. R.S. 32:24, AFFORDING PRIVILEGES AND IMMUNITY TO THE DRIVER OF AN EMERGENCY VEHICLE
In both Thigpen’s motion for partial summary judgment and defendants’ cross motion for summary judgment, the parties asserted that interpretation of La. R.S. 32:24 resulted in a ruling in their favor. Section 24 provides in part: -
A. The driver . . : of an authorized emergency vehicle, when responding to an emergency call ... may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver ... of an authorized emergency vehicle may .... [p]ark or stand, irrespective of the provisions of this Chapter....
C. The exception[ ] herein granted to an authorized emergency vehicle shall apply only when such vehicle ... is making use of audible or visual signals ... sufficient to warn motorists of their .approach....
D. The foregoing provisions shall not relieve the driver ... of an authorized vehicle- from the duty to drive ... with due regard for the safety of all persons, nor shall such provisions protect the driver ... from the consequences of his *1145 reckless disregard for the safety of others.
Subsection D sets out two standards of care for an emergency vehicle driver depending on the circumstances of the case. If, and only if, an emergency vehicle driver’s actions fit into subsections A, B and C of Section 24 will an emergency vehicle driver be held liable only for actions which constitute “reckless disregard for the safety of others.” On the other hand, if the emergency vehicle driver’s conduct does not fit subsections A, B and C of Section 24, such driver’s actions 17-will be gauged by a standard of “due care.” Lenard v. Dilley, 2001-1522 (La. 1/15/02), 805 So.2d 175, 180.
Under the facts of our case, for the reckless disregard standard afforded to an emergency vehicle driver to apply, the record must establish that: Cpt. Lacombe was driving an authorized vehicle in response to an emergency call; the accident arose while he was engaged in parking or standing the authorized emergency vehicle; and he was making use of audible or visual signals sufficient to warn motorists of their approach. See Lenard, 805 So.2d at 180. On appeal, Thigpen does not dispute, and the documents offered by the parties clearly established that Cpt. La-combe was on an emergency call and had engaged the fire truck’s audible and visual signals from the time he left the fire station until he stopped in the left lane of the westbound I—10 roadway where he disengaged the siren but left the emergency lights illuminated.[4] Thus, for purposes of interpreting La. R.S. 32:24, we focus on whether Engine #30 was an authorized emergency vehicle; and, if so, whether Cpt. Lacombe had engaged in parking or standing the fire truck at the time of the accident such that the reckless disregard standard applies in this case.
A. Authorized Emergency Vehicle
Thigpen asserts that the definition of “authorized emergency vehicle” set forth in La. R.S. 32:1(1) must be read in pari materia with the requirements for audible and visual signals on certain vehicles provided for in La. R.S. 32:318. According to Thigpen, when La. R.S. 32:24, 1(1) and 318 are read together, defendants cannot avail themselves of an application of reckless disregard standard because Engine # 30 is not an authorized emergency vehicle.
|sLa. R.S. 32:1(1) states that, unless the context clearly indicates a different meaning when used in a statute in Louisiana’s Highway Regulatory Act, an “authorized emergency vehicle” means, in relevant part, “a vehicle of a fire department.” According to the pertinent provisions of La. R.S. 32:318C:
Every authorized emergency vehicle shall ... be equipped with signal lamps mounted as high and as widely spaced laterally as practicable, which shall be capable of displaying ... to the rear two alternately flashing red lights located at the same level, and these lights shall have sufficient intensity to be visible at five hundred feet. (Emphasis added.)
We note that Section 318 appears in Subpart A of Part V, entitled “Lights and Other Lighting Equipment,” of Louisiana’s *1146 Highway Regulatory Act. Nothing in Section 318 purports to define what constitutes an authorized emergency vehicle or to otherwise alter the definition set forth in Subsection 1(1). Rather, as with all the other provisions in Part V, Subpart A, Section 318 merely describes the lighting obligations required of an authorized emergency vehicle.
Moreover, according to the provisions of La. R.S. 32:24C, to receive the benefits of Subsection B, the driver of the authorized emergency vehicle need only make use of either audible or visual signals “sufficient to warn motorists of [his] approach.” Thus; it is the sufficiency of the warning that is the instrumental determination necessary to trigger Subsection B’s privilege allowing emergency drivers to park or stand their authorized emergency vehicles irrespective of any other provisions of Louisiana’s Highway Regulatory Act.
The record established that Engine # 30 was equipped with signal lamps mounted at the top of the rear of the fire'truck widely spaced laterally. But instead of displaying two rear alternately flashing red lights located at the. same level, the fire truck was equipped in the rear with two amber dome-style rotating lights located at the same level on each of the back corners. The fire truck also had an array of other red and clear lights located in the front and on the sides. Dash-cam | ¿video from Louisiana State Trooper Huey McCartney, who was investigating the eastbound I—10 accident to which District No. 3 was responding, captured Engine # 30 on westbound I—10 in the inside lane of travel. The video showed the fire truck for approximately seven seconds before it went out. of view prior to Thigpen’s rear end impact with it. Our review of the video shows that Engine # 30 was clearly visible and well illuminated with red, clear, and amber lights as it proceeded.[5]
We decline to conflate the definition of an authorized emergency vehicle set forth in Section 1(1) with the equipment requirements set forth in Section 318C. Since- the record fails to establish that the authorized emergency vehicle’s activated lighting was insufficient to warn motorists of its approach, we conclude the fire truck that Cpt. Lacombe was- driving fell within the ambit of the plain language of La. R.S. 32:24A.
B. Parking or Standing of the Fire Truck
Thigpen next points to the definitions of “park” and “stand” in La. R.S. 32:1 to assert that Cpt. Lacombe’s action of stopping Engine # 30 on westbound 1-10 parallel to the site of the accident on eastbound 1-10 (the eastbound accident) to allow fire fighters, trained as emergency medical technicians, to attend to reported injuries was not within the ambit of La. R.S. 32:24. Reading Section 24 in pari materia with Section 1, Thigpen avers, Cpt. Lacombe’s actions must be judged under an ordinary negligence standard of care rather than the reckless disregard standard provided to drivers of authorized emergency vehicles under Section 24D.
As we have already noted, La. R.S. 32:24B(1) states that the driver of an authorized emergency vehicle may park or stand, irrespective of the provisions of this Chapter. La. R.S. 32:1 sets forth definitions for Chapter 1, Louisiana’s Highway Regulatory Act, providing:
| mWhen used in this Chapter, the following words and phrases have the mean *1147 ings ascribed to them in this Section, unless the context clearly indicates a different meaning:
* ⅛ *
(46) “Park” or “parking” means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers.
* * *
(71) “Stand” or “standing” means the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers.
Because it is undisputed that Cpt. La-combe was temporarily stopped in the left lane of the westbound 1-10 roadway to discharge the fire fighters on board Engine # 30 to more rapidly respond to the eastbound accident site, Thigpen asserts applying Section 1 to the provisions of Section 24B(1) shows that the fire truck was not parked or standing so as to allow defendants to qualify for the reckless disregard standard of care. We disagree.
The preambulatory clause of La. R.S. 32:1 states that the enumerated definitions have the ascribed meanings “unless the context clearly indicates a different meaning.” Our review of Louisiana’s Highway Regulatory Act reveals that the terms park/parking and/or stand/standing are used primarily in Part IV, “Traffic Regulations,” in Subpart E, entitled “Parking, Standing and Stopping.” See La. R.S. 32:141-146. Each of these sections proscribes conduct relative to leaving a vehicle on a roadway for otherwise than the temporary loading and unloading or receiving and discharging of passengers. Violations of these provisions generally result in citations.[6] Section 24 is located not in Subpart E of Part IV, but in Subpart A of Part II, addressing “Uniformity of Application.”[7] JjjNone of the Sections of Subpart A of Part II other than Section 24- uses the terms park/parking and/or stand/standing. To superimpose the definitions of park/parking and/or stand/standing set forth in Section 1 onto the plain language meaning of those terms in Section 24 results in an interpretation that is not reasonable or practical. See Rabalais, 952 So.2d at 662.
The obvious purpose of La. R.S. 32:24 is to provide protection to drivers of authorized emergency vehicles who, because of the nature of their obligations, in responding to emergency situations may have to make unusual, unexpected, and sudden movements.[8] The “high social value and premium placed on protection and rescue efforts” is well established in our law. See Lenard, 805 So.2d at 180.
We find a construction of Subsection 24B(1) which superimposes the definitions of Section 1(46) and (71), undermines the purpose of La. R.S. 32:24. Specifically, a driver of an authorized emergency vehicle is afforded more protection the moment he/she stops. But once emergency personnel commence exiting the vehicle to attend to rescue efforts, the driver is no longer provided that protection. Subsequent to the disembarking of emergency personnel, the driver in the non-moving emergency vehicle is again afforded pro *1148 tection. Unlike situations under La. R.S. 32:141-146 where the temporary loading or unloading of passengers may relieve a driver from receipt of citation, we can see no reasonable basis to distinguish the standard of care where a driver of an authorized emergency is responding to' an urgent situation by allowing personnel to disem? bark from those instances where he/she is simply stopped on the roadway. Therefore, we conclude the use of the terms “park” and .“stand” in R.S. 32:24 are- a context which clearly indicates a different meaning from that ascribed in La. R.S. 32:1(46) and (71). As |12such, under the clear and unambiguous perambulatory language of Section 1, those definitions are inapplicable.
Accordingly, under the undisputed facts of this case, interpreting “park” and- “stand” as the terms are ordinarily understood, the record establishes that Opt. Lacombe was driving an authorized emergency vehicle in response to an emergency call while parking the fire truck and making use of his visible .signals sufficient to warn motorists of their approach. As such, defendants are entitled to ’ assert the immunity set forth in La. • R.S. 32:24 and Thigpen’s burden at trial so- as to support a • finding of fault for which defendants are liable is to prove that Opt; Lacombe acted with reckless disregard for the safety of others when he chose to park Engine #30 in the left lane of 1-10 to allow emergency personnel to exit the vehicle and cross the median of the interstate to respond to the eastbound accident. The trial court correctly granted this'portion of defendants’ motion for summary judgment.
V. PROPRIETY OF THE DISMISSAL OF THIGPEN’S CLAIMS
Having determined the applicable standard of care that Thigpen must prove, .we turn now to the summary judgment documents offered in support of and in opposition to the dismissal of defendants from the lawsuit. In so doing, we focus on the facts established by the documents to determine whether Opt. Lacombe acted with reckless disregard to the safety of others under the immunity protection afforded to him by La. R.S. 32:24D.
“Reckless disregard” connotes conduct more severe than negligent behavior. “Reckless disregard” is, in effect, ‘‘gross negligence.” Gross negligence has been defined as the want of even slight Care and diligence. It is the want of that diligence which even careless persons áre accustomed to exercise. Lenard, 805 So.2d at 180. Gross negligence has also been termed the entire absence of care and |isthe utter disregard of prudence, amounting to complete neglect of the rights of others. Rabalais, 952 So.2d at 658.
Thigpen avers that in responding to the eastbound accident, Opt. Lacombe had a duty to keep the westbound flow of traffic unaffected. By parking or standing Engine #30 in the left lane of traffic, Thigpen reasons .that Opt. Lacombe created an unanticipated hazard on the interstate thereby breaching the duty he owed to motorists on the roadway. As we have already determined, irrespective of any duties that may have been owed and breached under the emergency response circumstances, defendants can only be liable to Thigpen if she can show that Opt. Lacombe acted with reckless disregard for the safety of others.
A. Showing Made by Defendants
In support of their entitlement to dismissal from the lawsuit, defendants offered the deposition testimony of Cpt. Lacombe, who testified that on the night of the accident, the Ascension Parish Sheriff Office (ÁPSO) dispatched District Nó. 3, advising of a motor vehicle- accident near the Aseen *1149 sion-East Baton Rouge parish line on eastbound 1-10. Cpt. Lacombe recalled dispatch having stated an overturned vehicle was involved with an entrapment and either an unresponsive or unconscious person. Given the information provided in the dispatch, Cpt. Lacombe responded with a Code 3, which is District No. 3’s most urgent response code. He activated Engine # 30’s siren and emergency lights and proceeded to the accident site.
When Engine #30 arrived parallel to the eastbound accident site on the I—10 westbound roadway, it was dark. Cpt. La-combe identified that the police were present at the eastbound accident site by the flashing blue lights, and he spotted a rolled over vehicle. Cpt. Lacombe stopped the fire truck in the left lane of the I—10 roadway with the emergency lights activated. He stated that stopping a fire truck in a travel lane of the interstate was proper. He could not park on the right travel | i4lane shoulder since this would have risked the safety of the exiting fire fighters by requiring that they cross two lanes of the 1-10 westbound roadway traffic to get to the median. By letting the fire fighters out in the left lane of travel, Cpt. Lacombe realized that, since the trooper ihvestigating the eastbound accident was present, he could assist the fire fighters in crossing the 1-10 eastbound roadway. It was Cpt. Lacombe’s intention to continue on westbound 1-10 to the Highland Road exit, where he could have turned and headed east on 1-10 back to the eastbound accident site.
According to Cpt. Lacombe, when he was stopping in the left lane, there were no other vehicles passing him in the right lane. With lights fully activated, he brought Engine #30 to a complete stop and was hit from behind. None of the fire fighters had actually exited Engine # 30 at the time of the impact.
Cpt. Lacombe explained that while in the fire, truck, fire fighters are unable to hear communications from other responding agencies, only dispatches from APSO. Therefore, at the time of the accident, he was unaware Louisiana State Police had ascertained that the overturned vehicle involved people refusing medical aid. District No. 3 responded to the eastbound accident as a Code 3 at all times until Thigpen rear-ended the fire truck.
Also admitted into evidence in support of defendants’ motion for summary judgment was Cpt. Lacombe’s affidavit.[9] In addition to attestations consistent with his deposition testimony, Cpt. Lacombe stated that before he stopped/he looked in Indus side view mirrors. He saw a white light fairly far behind him and decided it was a safe time to stop. The dash-cam video of Trooper McCartney’s vehicle confirmed that the nearest vehicle behind the fire truck before Engine # 30 went out of view was “fairly far” behind it.
*1150 Given Cpt. Lacombe’s testimony that he believed it was a safe time to stop, coupled with his action of ascertaining that no vehicles were in the immediate vicinity of the fully illuminated fire truck, confirmed by the dash-cam video, defendants have established that Cpt. Lacombe did not drive Engine # 80 with reckless disregard for the safety of others. The summary judgment documents establish that Cpt. Lacombe drove with care and diligence, not that he acted with an entire absence of care or an utter disregard of prudence that would amount to the complete neglect of the rights of others. With this showing, the burden shifted to Thig-pen to produce evidence sufficient to support a factual finding that Cpt. Lacombe acted with reckless disregard for the safety of others such that a genuine issue of material fact remained. See La. C.C.P. art. 966D(1).
B. Responsive Showing Made by Thigpen
According to the salient portions of Thigpen’s deposition testimony, she entered westbound 1-10 at the Highway 30 onramp in Gonzales proceeding to Baton Rouge. She saw the fire truck enter the interstate at the Highway 73 onramp with its emergency lights on, but it sped out of her field of vision. When she passed the Highway 73 exit in Prairieville, she was traveling in the right lane. Because the car in front of her was driving slower than she was, she pulled into the left lane to pass it. A white pick-up truck immediately preceded her once she was in the left lane. After she passed a wooded area of the median and came out of a curve in the roadway, she saw the eastbound accident site. Thig-pen was between 1-1/2 to 2 car lengths behind the white pick-up truck, traveling at no more than 60 |1fimph, when the white pick-up truck suddenly swerved into the right lane of travel and Thigpen saw the fire truck again. She was unable to avoid hitting it.
Thigpen also offered Gillen’s affidavit and deposition into evidence. Attached to his affidavit was a report he prepared setting forth his expert opinion which concluded that Cpt. Lacombe had acted with reckless disregard for the safety of others when he stopped Engine #30 in the left lane of the 1-10 westbound roadway. The trial court permitted the expert’s opinion, noting that it went “to the weight of the evidence, and not its admissibility,” in response to defendants’ motion to exclude the expert’s opinion which they averred was based on assumptions not supported by the evidence. In the writ application referred to this merits review, defendants maintain the expert opinion evidence should be disallowed and that without it Thigpen cannot demonstrate any outstanding issues of material fact exists.
A trial court is accorded broad discretion in determining whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert. Cheairs v. State ex rel. Dep’t of Transp. & Dev., 2003-0680 (La. 12/3/03), 861 So.2d 536, 541. The trial court’s decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. Maddox v. Bailey, 2013-0564 (La. App. 1st Cir. 5/19/14), 146 So.3d 590, 594.
Expert opinion admitted on summary judgment must be both reliable and relevant. See Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 233. The factual basis for an expert’s opinion determines the reliability of the testimony. Thus, an unsupported opinion can offer no assistance to the fact finder and should not be admitted as expert testimony. Robertson v. Doug Ashy Bldg. Materials, Inc., 2010- *1151 1552 (La. App. 1st Cir. 10/4/11), 77 So.3d 339, 355.
117La. C.E. art. 103A provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. In reviewing evidentiary decisions of the trial court, the appellate court must consider whether the particular ruling complained of was erroneous and, if so, whether the error prejudiced the complainant’s cause, for unless it did, reversal is not warranted. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Maddox, 146 So.3d at 594; see and compare Solito v. Horseshoe Entertainment, 36,667 (La. App. 2d Cir. 12/18/02), 834 So.2d 610, 616 (assuming the expert’s report and deposition testimony were improperly admitted into evidence, the admission is subject to harmless error analysis).
Our review of Gillen’s opinion establishes that his conclusions are based on facts not established by the summary judgment documents. Gillen acknowledged that he made assumptions about the speed of the white pick-up truck, the rate at which it made the lane change to avoid the fire truck, the point the lane change was completed, and the locations in the travel lane of both the white pick-up truck and Thigpen’s car. More particularly, Gillen based his conclusion that Cpt. Lacombe had acted with reckless disregard for the safety of others when he stopped Engine # 30 in the left lane of the 1-10 westbound roadway on the assumption that Thigpen was following the white pick-up truck at the recommended 2-second interval immediately before it moved to the right travel lane. But. Thigpen expressly stated she was traveling 1-1/2 to 2 car lengths behind the white pick-up truck. In his deposition testimony, Gillen conceded this was less than the 2-second interval recommendation and “obviously ... she’s not going to be able to avoid an object based on that following distance.”
Gillen nevertheless suggested that if Thigpen could not have been able to avoid the accident traveling 2 seconds behind the white pick-up truck, it showed | iSCpt. Lacombe had acted with reckless disregard regardless of the l-l/2-to-2 car length distance she traveled behind the white pick-up truck. But the record is devoid of any evidence to support a finding that, traveling at the recommended 2-sec-ond interval behind the white pick-up truck, a driver of a small car like Thigpen’s could not have seen the emergency lights of the fire truck, heeded the warning, slowed down, and avoided the accident. Absent such evidence, Gillen’s conclusion that Cpt. Lacombe acted with reckless disregard when he stopped in the left lane roadway was based on facts not established by the summary judgment documents. Thus,. because any error by the admission of Gillen?s'report and deposition testimony, when compared to the record in its totality of the record, did not have a substantial effect on the outcome, the writ is denied.[10]
*1152 By their showing, defendants established that Cpt. Lacombe did not act with reckless disregard for the safety of others'. Because Thigpen was unable to produce factual support sufficient to establish the existence of a genuine issue of material fact to rebut defendants’ showing, the trial court correctly granted summary | judgment and dismissed Thigpen’s claims against them.[11]
VI. DECREE
For these reasons, the trial court’s grant of summary judgment in favor of defendants is affirmed. The writ application of defendants-appellees, Cpt. Christopher La-combe, Ascension Parish Fire, and their liability insurer is denied. Appeal costs are assessed against plaintiff-appeílant, Kira Thigpen.
WRIT DENIED; JUDGMENT AFFIRMED,

. Although Thigpen alleged that District No. 3 was independently negligent for failing to properly train Cpt. Lacombe, the trial court rejected that contention and, on appeal, Thig-pen has not challenged District No. 3’s dismissal on that basis.

. See La. R.S. 32:1-399.

. Although the trial court denied Thigpen’s motion for partial summary judgment, -that denial is not appealable. - See La. C.C.P. art. 968. But because defendants’ motion for summary judgment raised that same issue, we reviewed Ihé applicable burden of proof at trial as part of Thigpen’s appeal of the grant of summary judgment in favor of defendants.

. By deposition, Thigpen testified that she could not recall whether she saw illuminated emergency lights on the fire truck after the accident. Photographs taken after the accident also brought into question whether all the fire truck’s emergency lights remained illuminated subsequent to the accident. But Cpt. Lacombe stated in his deposition testimony that the lights were activated at the time of the accident and that testimony was not rebutted.

. Thigpen admitted in her deposition testimony that she saw the illuminated fire truck when it entered the westbound travel lanes of I—10 at the Highway 73 entrance ramp and that it subsequently advanced out of her view.

. See generally La. R.S. 32:57.

. See La. R.S. 32:21-25.

. See e.g., La. R.S. 32:125 (setting forth the required procedure on approach of an authorized emergency vehicle and when passing a parked emergency vehicle) and Section 231 (recognizing the exception of the driver of an authorized emergency vehicle to the obligation of obedience to the instructions of any official traffic-control device).

. In his affidavit, Cpt. Lacombe identified the proceeding, State v. Thigpen, from Ascension Parish District Court, in which Thigpen was tried for the traffic citations she received as a result of the accident with the fire truck. On' appeal, Thigpen complains that the trial court erred in permitting the transcript of the citation proceeding. Defendants attempted to admit the transcript from the citation proceeding into evidence as an attachment to the citation court reporter’s affidavit. Although the trial court permitted admission of the court reporter's affidavit, it refused to allow the entire transcript into evidence. Cpt. La-combe "adopted and incorporated" his citation-proceeding testimony into his affidavit. Mindful that Thigpen has not challenged the authenticity of the contents of Cpt. Lacombe’s testimony, see La. C.E. art. 901A, because the attestations resulting from the adoption and incorporation of the citation-proceeding testimony contained in Cpt. Lacombe's affidavit were made on his personal knowledge, we find no error. See La. C.C.P. art. 967A.

. Gillen suggested that the use of a fire truck lacking the lights required by La. R.S. 32:318 resulted in a failure to allow motorists sufficient time to react to the stopped fire truck which constituted a reckless disregard for the safety of others, Since Thigpen stated she did not see the fire truck before the accident because, as Gillen opined, her view was blocked by the white pick-up truck, she would not have seen a fire truck with lighting in conformity with La. R.S. 32:318. Thus, the lighting configuration of Engine # 30 could not have been the cause-in-fact of the accident. We, therefore, pretermit a discussion of whether such use could have been a reckless disregard for the safety of others. Gillen also concluded that Cpt. Lacombe acted with reckless disregard by failing to park the fire truck *1152 in the median or partially on the left shoulder and in the median which, he opined, would have avoided creating an obstacle on the roadway. Gillen’s testimony established that, based on the axel ratings, Engine #30 weighed about 45,000 pounds. As a former police officer, Gillen acknowledged that he had become stuck in a median in a car weighing only about 5000 pounds. Raymond Laviol-ette, Jr., one of the fire fighters aboard Engine # 30 at the time of the accident, testified by deposition that fire trucks were not permitted to be driven off the roadway. This policy was confirmed by the deposition testimony of District No. 3 Fire Chief, Mark Stewart. Thus, the record established Cpt. Lacombe acted in conformity with District No. 3 policy when he chose not to utilize the median and, therefore, showed that he did not drive with reckless disregard for the safety of others. Thigpen has neither rebutted this showing by defendants nor alleged the independent liability of District No. 3 on the basis of this policy.

. Since we have concluded that the trial court correctly dismissed Thigpen’s claims we pretermit a discussion of whether application of the doctrine from Heck v. Humphrey, 512 U.S. 477, 486, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994) (civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments), would have' alternatively supported a dismissal of defendants from the lawsuit.