| | | |
|---|---|---|
| **IVY DIXON** | * | **NO. 2022-C-0013** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LOUISIANA STATE POLICE,** | * | |
| **STATE OF LOUISIANA,** | | **FOURTH CIRCUIT** |
| **THROUGH THE** | * | |
| **DEPARTMENT OF PUBLIC** | | **STATE OF LOUISIANA** |
| **SAFETY AND CORRECTIONS,** | * * * * * * * | |
| **COLONEL KEVIN W.** | | |
| **REEVES, IN HIS CAPACITY** | | |
| **AS THE SUPERINTENDENT** | | |
| **OF LOUISIANA STATE** | | |
| **POLICE, AND HELEN** | | |
| **ELIZABETH DELATTE** | | |

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-01428, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Rosemary Ledet, Judge
Paula A. Brown)


Amber Mandina Babin
William David Coffey
W. Bartlett Ary
LOUISIANA ATTORNEY GENERAL'S OFFICE
1450 Poydras Street, Suite 900
New Orleans, LA 70112

Jeff Landry, Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
P. O. Box 94005
Baton Rouge, LA 70804--9005

      COUNSEL FOR DEFENDANTS/RELATORS

Lauren A. Favret
Seth H. Schaumburg
FAVRET, DEMAREST, RUSSO, LUTKEWITTE & SCHAUMBURG
1515 Poydras Street, Suite 1400
New Orleans, LA 70112

COUNSEL FOR PLAINTIFF/RESPONDENT

**WRIT GRANTED;**
**JUDGMENT REVERSED**
**AND RENDERED**
**March 2, 2022**

This is a personal injury suit stemming from a two-vehicle accident. An emergency response vehicle—a fully marked police vehicle with its siren and lights activated—collided with another vehicle. The driver of the other vehicle, Ivy Dixon, commenced this suit against the State of Louisiana, through the Department of Public Safety and Corrections ("DPSC"), and Officer Helen Delatte (collectively "State Defendants"). State Defendants filed a summary judgment motion contending that they are entitled, as a matter of law, to immunity under the Louisiana emergency vehicle immunity statute, La. R.S. 32:24. From the trial court's October 8, 2021 judgment denying the summary judgment motion, State Defendants filed this writ.

In accordance with the requirements of La. C.C.P. art. 966(H),[1] we ordered additional briefing by the parties and heard oral arguments. For the reasons that follow, we grant State Defendants' writ application, reverse the trial court's

---

[1] La. C.C.P. art. 966(H) provides as follows: "[o]n review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument."

1

judgment denying State Defendants' summary judgment motion, and render judgment in State Defendants' favor, dismissing this suit.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On the morning of August 13, 2018, a fully marked, Louisiana State Police vehicle operated by Officer Delatte collided with a vehicle operated by Ms. Dixon. Seeking to recover for the injuries she allegedly sustained in the accident, Ms. Dixon filed suit against State Defendants. The accident occurred at the intersection of General DeGaulle Avenue westbound ("DeGaulle-Westbound") and Illinois Street in New Orleans. At this intersection, DeGaulle-Westbound has four travel lanes and has the right-of-way; Illinois Street has a stop sign. Ms. Dixon was traveling in the far right, fourth lane on DeGaulle-Westbound; Officer Delatte was traveling northbound on Illinois Street.

At the time of the accident, Officer Delatte was in pursuit of a fleeing criminal offender, with the police vehicle's emergency lights and sirens activated.[3] The pursuit led Officer Delatte north on Illinois Street to the stop sign at its intersection with DeGaulle-Westbound. The fleeing offender disregarded the stop sign and crossed the four lanes of DeGaulle-Westbound without incident. Still in pursuit, Officer Delatte stopped briefly at the stop sign, pulsed the police vehicle's

---

[2] The statement of the facts is taken from the petition and the deposition testimony of Ms. Dixon and Officer Delatte.

[3] Officer Delatte stopped a vehicle on DeGaulle for a traffic violation. Through questioning the vehicle's driver and examining the vehicle's registration, Officer Delatte determined that the vehicle's driver had misrepresented his identity and that the vehicle's license plate was registered to another vehicle. Officer Delatte attempted to arrest the vehicle's driver, but the driver fled in his vehicle. Officer Delatte pursued the fleeing driver in her police vehicle.

sirens, and inched across the first three lanes of DeGaulle-Westbound, as traffic yielded to her police vehicle's crossing. A large white van in the third lane of DeGaulle-Westbound obstructed Officer Delatte's view of traffic in the fourth lane. Due to her obstructed view, Officer Delatte testified that she inched her police vehicle into the fourth lane. Simultaneously, Ms. Dixon drove her vehicle forward in the fourth lane of DeGaulle-Westbound; Ms. Dixon's vehicle collided with the front bumper of Officer Delatte's police vehicle.

According to Ms. Dixon, she was on her way to work at the time of the accident. She was driving in the fourth lane of DeGaulle-Westbound, proceeding towards the Crescent City Connection. She was listening to the radio and looking at the road ahead. She did not recall hearing a police siren. But, she noticed the white van traveling in the lane next to her come to a sudden stop. Because the white van blocked her view, Ms. Dixon did not see the police vehicle or its emergency lights until immediately before the accident. Ms. Dixon, however, testified that she does not pay attention to emergency lights unless they are in back of her. Ms. Dixon did not recall if she applied her brakes before the accident.

In her petition, Ms. Dixon averred that Officer Delatte acted negligently in operating the police vehicle, disregarding a stop sign, and proceeding "in the far right lane of [DeGaulle-Westbound] when her view was blocked by a white van." Ms. Dixon further averred that Officer Delatte was in the course and scope of employment with the DPSC and that the DPSC was grossly negligent by permitting Officer Delatte to operate the vehicle; training Officer Delatte

3

improperly; and failing to properly maintain and service the vehicle. Finally, she averred that DPSC is liable under the theory of respondeat superior.

In response, State Defendants filed a summary judgment motion, seeking dismissal under La. R.S. 32:24, the Louisiana emergency vehicle immunity statute. In the alternative, State Defendants requested a partial summary judgment on the issue of the applicable standard of care—a ruling that the reckless disregard, as opposed to the ordinary negligence, standard of care applies. In support of their motion, State Defendants submitted the body-cam video;[4] excerpts from Officer Delatte's and Ms. Dixon's depositions; and the report of Ronnie Jones, an expert in police and emergency operations.

Opposing the summary judgment motion, Ms. Dixon contended that the requirements of La. R.S. 32:24 were not met and that a negligence standard of care therefore applies. In support of her opposition, Ms. Dixon submitted the depositions of Officer Delatte and herself, the police report prepared by Trooper Pesson,[5] and the DPSC incident report prepared by Officer Delatte.

Following a hearing, the trial court denied State Defendants' summary judgment motion, finding that a factual dispute existed as to whether Officer

---

[4] The "body-cam video" refers to the digital video disc ("DVD") containing a copy of the video and audio recordings taken by the body-worn camera that was mounted on Officer Delatte's uniform during the pursuit of a fleeing motorist on the morning of August 13, 2018. The DVD was attached to the affidavit of LDPS's Executive Officer, Lt. Johnathan Hale; Lt. Hale, in his affidavit, authenticated the DVD.

[5] In the police report, Trooper Pesson concluded that "[Officer Delatte] was placed at fault for failure to yield while crossing an intersection."

Delatte was immune under La. R.S. 32:24.[6] The trial court also granted in part

State Defendant's alternative request for a partial summary judgment, ruling that

Ms. Dixon "concedes the satisfaction of La. R.S. 32:24(A)." This writ followed.

## DISCUSSION

Although State Defendants assign three errors, the narrow issue is whether

the Louisiana emergency vehicle immunity statute, La. R.S. 32:24, applies here.[7]

*Summary Judgment Principles and Standard of Review*

The summary judgment procedure is "designed to secure the just, speedy,

and inexpensive determination of every action"; and the summary judgment

procedure is favored. La. C.C.P. art. 966(A)(2). The summary judgment procedure

is used when there is no genuine issue of material fact for all or part of the relief

prayed for by a litigant. La. C.C.P. art. 966(A);[8] *see also Balthazar v. Hensley R.*

*Lee Contracting, Inc.*, 16-0921, 16-0922, 16-0923, 16-924, 16-0925, 16-0926, 16-

0927, 16-0928, p. 9 (La. App. 4 Cir. 3/15/17), 214 So.3d 1032, 1040 (observing

---

[6] At the hearing, the trial court observed that "don't [the emergency motorists] have some kind of duty to be careful or do a — before they do whatever maneuver they are making? And doesn't that make it a factual issue."

[7] State Defendants' three assignments of errors are as follows:

1. [The State Defendants] presented competent summary judgment evidence that the elements of La. R.S. 32:23(A-C) are met and, thus, the applicable standard of care under the circumstances is 'reckless disregard.'

2. [Ms.] Dixon has submitted no evidence that Officer Delatte acted with 'reckless disregard.'

3. The trial court erred in granting the Partial Motion for Summary Judgment on La. R.S.32:24(A) only.

[8] The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

5

that "summary judgment is a procedural vehicle for dismissing issues of law and/or fact that are not in dispute"). A shifting burden of proof is set forth in La. C.C.P. art. 966(D)(1).[9]

Appellate courts review the grant or denial of a summary judgment motion *de novo*, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 10-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-06; *Smith v. Treadaway*, 13-0131, pp. 3-4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828. A genuine issue is one as to which reasonable persons could disagree; "if . . . reasonable persons could reach only one conclusion, there is no need for trial on that issue," and summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.

"A fact is material if its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318, 325 (La. 1993). "Facts are 'material' if they potentially insure or preclude recovery, affect a litigant's ultimate

---

[9] La. C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

success, or determine the outcome of the legal dispute." *Penalber v. Blount*, 550 So.2d 577, 583 (La. 1989). Because the applicable substantive law determines materiality, the resolution of the issue of whether a fact is material turns on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270; *Jackson v. City of New Orleans*, 12-2742, p. 6 (La. 1/28/14), 144 So.3d 876, 882; *Richard v. Hall*, 03-1488, p. 5 (La. 4/23/04), 874 So.2d 131, 137.

*The Louisiana Emergency Vehicle Statute*

The applicable substantive law at issue here is the Louisiana emergency vehicle statute, La. R.S. 32:24, which provides in pertinent part:

A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

B. The driver or rider of an authorized emergency vehicle may do any of the following:
\*    \*    \*
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
\*    \*    \*
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

7

The purpose of this statute is "to provide protection to drivers of authorized emergency vehicles who, because of the nature of their obligations, in responding to emergency situations may have to make unusual, unexpected, and sudden movements." *Thigpen v. Lacombe*, 16-1611, 16-1612, p. 11 (La. App. 1 Cir. 8/29/17), 226 So.3d 1138, 1147. Simply stated, the purpose of this statute is to provide immunity from liability to drivers of authorized emergency vehicles— "emergency motorists"—under specific circumstances. *Rabalais v. Nash*, 06-0999, p. 13 (La. 3/9/07), 952 So.2d 653, 662.

In *Lenard v. Dilley*, 01-1522, pp. 6-7 (La.1/15/02), 805 So.2d 175, 180, the Supreme Court recognized that Subsection D of La. R.S. 32:24 provides for two alternative standards of care for emergency motorists depending on the circumstances of the case. When the emergency motorist meets the requirements of Subsections (A), (B), and (C) of La. R.S. 32:24, the emergency motorist can only be held liable for actions that constitute reckless disregard for the safety of others—gross negligence. *Rabalais*, 06-0999, pp. 15-16, 952 So.2d at 664 (citing *Lenard*, *supra*). Conversely, when the emergency motorist's conduct does not meet the requirements of (A), (B), and (C), the emergency motorist's conduct will be gauged by an ordinary due care standard—negligence. *Id.*

The three initial Subsections of this La. R.S. 32:24—Subsections (A), (B), and (C)—operate in tandem to define the emergency and the standards for actions that are allowed to meet the emergency. *Slone v. Greber*, 43,471, p. 7 (La. App. 2 Cir. 8/13/08), 989 So.2d 273, 278. To fall under the reckless disregard standard, an

8

emergency motorist must satisfy the following three requirements: (i) be responding to an emergency call, pursuing an actual or suspected violator of the law, or responding to a fire alarm; (ii) be taking one of the enumerated actions allowed to meet an emergency—here, proceeding past a stop sign after slowing down or stopping as may have been necessary for safe operation (Subsection (B)(2)); and (iii) be making use of audible or visual signals sufficient to warn motorists of the driver's approach. *See* La. R.S. 32:24. If all of three requirements are not safisfied, the emergency motorist's conduct must be evaluated under an ordinary due care, negligence, standard. *Lenard*, *supra*.

Whether an emergency motorist has acted with reckless disregard normally is a factual question resolved by trial on the merits; however, when there are no material facts in dispute, summary judgment may be appropriate. *Goutierrez v. St. Paul Ins. Co*., 13-614, 13-615, p. 7 (La. App. 5 Cir. 2/26/14), 136 So.3d 322, 325 (citing *Jones v. Congemi*, 01-1345, 02-148, 02-149. (La. App. 5 Cir. 5/13/03), 848 So.2d 41). Such is the case here.

Given the dual standard of care for emergency motorists the Supreme Court recognized in *Lenard*, this court's analysis in addressing State Defendants' summary judgment motion has two components. The first component is determining whether there are any genuine factual issues as to Officer Delatte's satisfaction of the requirements of Subsections (A), (B), and (C). On this issue, State Defendants have the burden of proof. If this question is answered no, then the reckless disregard standard, set forth in Subsection D, applies.

The second component is the application of the reckless disregard standard. On this issue, Ms. Dixon has the burden of proof. This component presents two overlapping issues. The first is whether the summary judgment evidence submitted eliminates any factual dispute regarding Officer Delatte's reckless disregard. The second is whether Ms. Dixon has failed to submit sufficient evidence to support a jury's finding that Officer Delatte operated the police vehicle with reckless disregard. If either question is answered yes, State Defendants are entitled to summary judgment. We separately address each component of the analysis.

**Satisfaction of Subsections (A), (B), and (C)**

It is undisputed that the requirement of Subsection (A) is satisfied; only the requirements of Subsections (B) and (C) are in dispute. The applicable provision of Subsection (B) provides that an emergency motorist is allowed to "[p]roceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation." La. R.S. 32:24(B)(2). Subsection C requires either "audible or visual signals"; the statute does not require that both audible and visual signals be given. *See Jones*, 14-0367, p. 8, 169 So.3d at 392 (citing *Slone*, *supra*). Subsection (C), however, requires not only the use of signals or sirens, but also that the use of the signals or sirens was "sufficient to warn motorists" of the approach of the emergency vehicle. La. R.S. 32:24(C).

Taken together, the questions posed here by Subsections (B)(2) and (C) is "did Officer [Delatte] enter the intersection in a manner 'necessary for safe operation' of her vehicle moving against the [stop sign] and did [she] give notice

10

'sufficient to warn motorists' such as [Ms. Dixon] who would otherwise have the right of way through the intersection?" *Slone*, 43,471, p. 7, 989 So.2d at 278. For Officer Delatte to have satisfied Subsections (B)(2) and (C), "[her] actions were required to be necessary and reasonable, giving sufficient warning." *Id.* We separately address the disputed component of each of these Subsections.

*Subsection (B)(2)—"Necessary for Safe Operation" Requirement*

The jurisprudence has construed Subsection (B)(2) as "present[ing] a choice for either stopping or merely slowing in order for the emergency vehicle to travel through an intersection against a red light [or stop sign]." *Slone*, 43,471, p. 8, 989 So.2d at 279. The jurisprudence has found the requirements of Subsection (B)(2) satisfied when an emergency motorist has "inched,"[10] "creeped,"[11] "eased,"[12] or "slowed substantially"[13] through an intersection. Conversely, the jurisprudence has

---

[10] *See Price v. Valenti*, 13-822, p. 7 (La. App. 5 Cir. 4/9/14), 140 So.3d 121, 125 (observing that the requirements of Subsection (B)(2) were satisfied when the emergency motorist "'inched' her way across, looking both ways before she entered each lane of the roadway, in her attempt to cross the intersection").

[11] *See Janise v. Acadian Ambulance Serv., Inc.*, 17-1100, pp. 15-16 (La. App. 3 Cir. 4/25/18), 244 So.3d 541, 549-50 (observing that the requirements of Subsection (B)(2) were satisfied when the emergency motorist "'slowly' and 'cautiously' crossed the intersection at about five to ten miles per hour in a manner he described as 'creeping'").

[12] *See Matthews v. Maddie*, 01-1535, p. 6 (La. App. 1 Cir. 6/21/02), 822 So.2d 739, 742 (observing that the requirements of Subsection (B)(2) were satisfied when the emergency motorist "eased into the intersection only after coming to an almost complete stop" and the emergency motorist "observed traffic all around the intersection to be yielding to his emergency vehicle as he slowly pulled into the intersection").

[13] *See Slone*, 43,471, p. 8, 989 So.2d at 279 (observing that the requirements of Subsection (B)(2) were satisfied when the video showed that the emergency motorist "slowed substantially" and activated his brakes as he entered the intersection with a red light and noting that under the circumstances the emergency motorist was not mandated to stop).

found the requirements of Subsection (B)(2) not satisfied when an emergency motorist has "punched"[14] through an intersection.

Here, the body-cam video—corroborated by Officer Delatte's deposition testimony[15]—establishes that Officer Delatte either completely or nearly stopped before "inching" into the fourth lane of DeGaulle-Westbound. Ms. Dixon concedes in her opposition brief that Officer Delatte "creeped" through the intersection;[16] nonetheless, she contends that the requirements of Subsection (B)(2) are not satisfied because Officer Delatte failed to stop or slow down before entering the fourth lane, especially given the obstructed view caused by the white van.

The State Defendants counter that Subsection (B)(2) does not require an emergency motorist who traverses across multiple lanes of travel to stop or slow

---

[14] *See Spears v. City of Scott*, 05-230, p. 9 (La. App. 3 Cir. 11/2/05), 915 So.2d 983, 991 (observing that the requirements of Subsection (B)(2) were not satisfied when the emergency motorist "'punched' it after coming to a rolling stop at the intersection and did not continue to monitor traffic when he entered the intersection, even though he was traveling through the intersection against a red light").

[15] Here, Officer Delatte testified in her deposition that she stopped at the stop sign and then "inched" through the intersection; her testimony was as follows:

> As I recall from the accident, traffic was the lane -- the left lane of traffic stopped, so I inched out. The left center lane stopped, I inched into that lane, then the right center lane stopped, that's where the—that's where the van was stopped at in the right center lane. I couldn't see around him, so all I did was inch out a little bit more, and that's when the impact occurred.

[16] In her opposition brief, Ms. Dixon cites *Neloms v. Empire Fire & Marine Ins. Co.*, 37,786 (La. App. 2 Cir. 10/16/03), 859 So.2d 225, as also involving an emergency motorist who "creeped" through an intersection and whose conduct nonetheless was found to have not satisfied the requirements of Subsection (B)(2). Ms. Dixon's reliance on the *Neloms* case is misplaced. There, the emergency motorist testified that she "creep[ed]" through the intersection at three to five miles per hour. *Neloms*, 37,786, p. 3, 859 So 2d at 228. But, the appellate court, based in part on the photographs of the vehicles in the record, rejected this testimony. Instead, the appellate court found "the significant collision between the vehicles indicates that [the emergency motorist] did not stop or slow down when she went through the intersection and she had to have been traveling at a much greater speed than the 3-5 miles per hour to which she testified." *Neloms*, 37,786, p. 9, 859 So 2d at 231. For this reason, the appellate court found the requirements of Subsection (B)(2) were not satisfied.

down at each lane. We agree.[17] The fact that Officer Delatte failed to stop or slow

down before entering the fourth lane does not defeat the satisfaction of the

requirements of Subsection (B)(2). Under the circumstances presented here,

Officer Delatte's actions in stopping or slowing down before entering the

intersection coupled with her waiting for approaching vehicles to yield to her

before inching through the intersection were sufficient to satisfy the requirements

of Subsection (B)(2).

*Subsection (C)—Sirens or Lights "Sufficient to Warn Motorists"*

The jurisprudence has construed Subsection (C) to require not only the use

of signals or sirens, but also "a further showing that use of the signal or signals was

---

[17] Although no Louisiana court has addressed the issue of an emergency motorist's duty in traversing a multi-lane intersection to stop or slow down at each lane, the Alabama Supreme Court did so in *Ex Parte City of Montgomery*, 272 So.3d 155 (Ala. 2018). There, the Alabama Supreme Court construed Ala. Code § 32-5A-7(b)(2), which—like La. R 32:24 (B)(2)—provided that an emergency motorist has the right to "proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation." Rejecting the argument that the emergency motorist was required to stop or slow down at each lane to satisfy the statutory requirements, the Alabama Supreme Court observed:

> As clearly shown in the dashboard-camera video, after activating the emergency lights and siren on her patrol car, and starting from a complete stop, [the emergency motorist's vehicle] slowly proceeded into the intersection. [The emergency motorist] was not required to further slow her patrol car when entering each lane and crossing the intersection in order to satisfy the requirements of § 32-5A-7(b)(2). . . . [A]fter [the emergency motorist] activated her emergency lights and siren, there was a sufficient amount of time for two northbound lanes of traffic to stop before [the emergency motorist's] patrol car entered the intersection."

*Montgomery*, 272 So.3d at 163. The Alabama Supreme Court thus found the statutory requirements were satisfied. In finding the issue before it properly decided on a summary judgment motion, the Alabama Supreme Court emphasized the existence of a dashboard-camera video, citing *Scott v. Harris*, 550 U.S. 372, 380-81; 127 S.Ct. 1769, 1776; 167 L.Ed.2d 686 (2007).

In *Scott*, the United States Supreme Court faulted the lower court for relying on a "visual fiction" and instructed that the court "should have viewed the facts in the light depicted by the videotape." *Id.*. at 380-81. The Supreme Court further observed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.*" Id*. at 380.

'sufficient to warn motorists' of the approach of the emergency vehicle." *Inzinna v. Guitreau*, 18-0905, p. 13 (La. App. 1 Cir. 2/22/19), 272 So.3d 582, 592. As State Defendants point out, Ms. Dixon's argument is not that Officer Delatte failed to activate the lights and sirens of the police vehicle, but that the lights and sirens were insufficient to warn to her. In support, she cites the fact that she had no opportunity to see the emergency lights due to the obstruction caused by the white van. She also points out that because she was looking straight ahead at the road in front of her with her radio playing and windows up, she was unable to hear the direction of the police sirens.

In resolving this issue, we note, contrary to Ms. Dixon's suggestion, that the requirements of Subsection (C) impose an objective, not a subjective, standard— sufficient notice to a reasonable motorist.[18] Here, it is not disputed that Officer Delatte activated both the emergency lights and sirens on the police vehicle. Ms. Dixon testified that she never saw the emergency lights on the police vehicle until immediately before the accident and that she never heard the sirens. But, the record reflects that the drivers in the three other lanes of DeGaulle-Westbound—including the white van in the lane adjacent to Ms. Dixon—yielded to Officer Delatte's approach. Indeed, Ms. Dixon testified that she saw the white van suddenly stop.

---

[18] In so finding, we analogize to the construction the jurisprudence has given the statutory provision imposing a duty on drivers to yield the right-of-way to an emergency motorist. *See* La. R.S. 32:125(A) (providing that "[u]pon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, . . . the driver of every other vehicle shall yield the right-of-way"). Construing La. R.S. 32:125(A), the jurisprudence has held it imposes a duty to yield when a driver "observes or hears, or *under the circumstances should have observed or heard*, the audible or visual warning." *Griffin v. City of Monroe*, 46,229, p. 5 (La. App. 2 Cir. 4/13/11), 61 So.3d 846, 850 (emphasis added). The jurisprudence has thus imposed an objective standard under La. R.S. 32:125(A). We find the same is true under La. R.S. 32:24(C).

Given these circumstances, we find the requirements of Subsection (C) were satisfied.

In sum, given that Officer Delatte's actions satisfied the requirements of Subsections (A), (B), and (C), the applicable standard of care under Subsection (D) is reckless disregard. We, thus, turn to the second component of our analysis.

**Reckless Disregard under Subsection (D)**

Reckless disregard "connotes conduct more severe than negligent behavior" and is in effect gross negligence, which is defined as "the want of even slight care and diligence" or the "the want of that diligence which even careless men are accustomed to exercise." *Lenard*, 01-1522, p. 6-7, 805 So.2d at 180. The Louisiana Supreme Court in *Rabalais*, 06-0999, pp. 5-6, 952 So.2d at 658, further explained:

> Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the [dictates] of prudence, amounting to complete neglect of the rights of others." *Hendry Corp. v. Aircraft Rescue Vessels*, 113 F.Supp. 198 (E.D.La.1953) (applying Louisiana law). Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." W. Page Keeton, *et. al.*, PROSSER & KEETON ON THE LAW OF TORTS, § 34, at 211 (5th ed. 1984); 65 C.J.S. Negligence, § 8(4)(a), at 539–40 (1966 & Supp. 1993). "There is often no clear distinction between such [willful, wanton, or reckless] conduct and 'gross' negligence, and the two have tended to merge and take on the same meaning." *Falkowski v. Maurus*, 637 So.2d 522 (La. App. 1st Cir.), *writ denied*, 629 So.2d 1176 (La. 1993) (quoting Prosser & Keeton, *supra*, at 214). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

As noted elsewhere in this opinion, Ms. Dixon has the burden of proof on the reckless disregard issue. State Defendants were only required to point out the absence of evidence to establish reckless disregard; the burden then shifted to Ms.

Dixon to establish the existence of a genuine factual issue as to whether Officer Delatte acted with reckless disregard. *See* La. C.C.P. art. 966(D)(1).

State Defendants emphasize that Ms. Dixon's petition pleads only negligence claims regarding Officer Delatte's conduct—acting negligently in operating the police vehicle, disregarding a stop sign, and proceeding "in the far right lane of [DeGaulle-Westbound] when her view was blocked by a white van."[19] State Defendants also point out that the evidence they introduced—the deposition testimony, body-cam video, and Mr. Jones' expert report—established the absence of evidence to establish reckless disregard on Officer Delatte's part. We agree.

The deposition testimony of both witnesses and the body-cam video reveal that Officer Delatte did not act in reckless disregard. When she approached the intersection of Illinois and DeGaulle-Westbound, Officer Delatte stopped, checked for approaching traffic, and waited for approaching vehicles to yield to her before inching through the intersection. The vehicles in the first three lanes—including the white van traveling in the lane adjacent to Ms. Dixon—yielded. The body-cam video reveals that approximately eleven seconds elapsed between when Officer Delatte reached the stop sign and the accident occurred, suggesting that Officer Delatte was careful and deliberate in crossing the intersection.

Likewise, Mr. Jones, an expert in law enforcement and police-emergency vehicle operations, stated in his report that Officer Delatte was "consciously aware

---

[19] *See McQuirter v. State*, 20-1192, p. 2 (La. 1/12/21), 308 So.3d 285, 286 (observing that "[p]laintiffs' allegations that Holloway wore sunglasses, overloaded the sandbags, struggled to maintain control of the vehicle, and looked at his phone while driving constitute ordinary negligence, but do not, as a matter of law, rise to willful misconduct").

of the hazards posed by her pursuit" and that she "never lost sight of her obligations to operate her vehicle in a manner which under the circumstances was reasonable and prudent." Mr. Jones opined that Officer Delatte's conduct was reasonable and that at no time were her actions reckless or taken without due regard for the safety of others in the area.

In opposing the summary judgment motion and seeking to establish a genuine issue of material fact regarding Officer Delatte's reckless disregard, Ms. Dixon offered the statements in the police report of Trooper Pesson, the officer who investigated the accident. Trooper Pesson found Officer Delatte at fault for failing to yield through the intersection. Although Trooper Pesson's opinion regarding Officer Delatte's fault arguably could be enough to prove her actions were negligent, it is not enough to prove her actions were in reckless disregard. Fault does not amount to reckless disregard.

Given Ms. Dixon failed to present any evidence establishing a genuine issue of material fact regarding whether Officer Delatte's actions were in reckless disregard, the trial court erred in denying State Defendants' summary judgment motion based on the Louisiana emergency vehicle immunity statute. Accordingly, State Defendants are entitled to judgment, as a matter of law, dismissing Ms. Dixon's claims against them.[20]

---

[20] Given this finding, State Defendants' alternative argument that this court find the applicable standard is reckless disregard is moot.

## DECREE

For the foregoing reasons, we grant State Defendants' writ, reverse the trial court's judgment denying their summary judgment motion, and render judgment granting their motion and dismissing Ms. Dixon's claims against State Defendants.

**WRIT GRANTED; JUDGMENT REVERSED AND RENDERED**